Anderson v. Kincheloe.

—◦◦◦—

ANDERSON, Respondent, v. KINCHELOE et al., Appellants.

1. The supreme court will not grant a new trial on the ground that an instruction unsupported by the testimony was given, unless the giving of such instruction was calculated to mislead the jury.

2. Courts should not give instructions amounting to a comment on the testimony, nor instructions calculated to mislead the jury by inducing them to attach undue importance to a portion only of the testimony, and to divert their attention from other facts entitled to consideration.

3. He who, knowing that he has no right to the possession of property, withholds the possession thereof from the true owner, who had wrongfully been deprived of the same, may be supposed to have assented to the wrongful act by which such possession was obtained.

Anderson v. Kincheloe.

### Appeal from Carroll Circuit Court.

The defendants asked the court to give the following instructions : " 2. The jury can not find against defendant Kincheloe unless they believe he authorized Dickenson wrongfully to obtain possession of said slaves from plaintiff, or afterwards withheld them from plaintiff, knowing that Dickenson had improperly brought said slaves away. 3. There is no evidence before the jury that defendant Kincheloe authorized or directed defendant Dickenson wrongfully to obtain possession of said slaves, nor that defendant Kincheloe withheld said slaves with a knowledge of any improper conduct on the part of said Dickenson. 4. Defendant Kincheloe is not responsible for any tortious or wrongful act or conduct of defendant Dickenson, unless he authorized the same, or knowingly ratified the same. 8. If the jury believe that plaintiff was legally entitled to the possession of the slaves in controversy in virtue of the alleged transfer thereof by said Gratz, the mere possession of said slaves by defendant Kincheloe would not render him liable to plaintiff in this action." Of these instructions the court gave the fourth, and refused the others.

The court gave the following instruction of its own motion: " 10. The jury can not find against the defendant Kincheloe unless they believe he authorized defendant Dickenson wrongfully to obtain possession of said slaves from plaintiff, or afterwards withheld them from plaintiff."

The other instructions commented on by the court, together with the facts in evidence, are sufficiently set forth in the opinion of the court.

Troxell, for appellants.

I. Plaintiff showed no right to the possession of the slaves. There was no evidence that Dickenson was the agent of Kincheloe for the purpose of hiring the slaves to Gratz, or was authorized to submit the question as to their possession to arbitrators. The mere fact that the slaves were in possession of Kincheloe did not render him responsible for a wrong-

ful conversion, nor did their mere retention by Kincheloe render him a trespasser *ab initio*. No asserted agency of Dickenson extended to an arbitration. The third and tenth instructions given to the jury were erroneous. The court improperly refused the second, third, seventh and eighth instructions asked by defendants. No authority to Dickenson to commit a trespass could be implied, nor could Kincheloe be held responsible for such trespass unless he had knowledge of its commission.

*Hicks*, for respondent.

I. Anderson had a right to the possession of the slaves. The court committed no error in giving or refusing instructions.

EWING, Judge, delivered the opinion of the court.

This was an action for the alleged wrongful taking and conversion of certain slaves. The petition alleges that in the winter or spring of 1859, one Henry H. Gratz hired of the defendant Kincheloe, of Carroll county, four slaves for the year 1859, and executed and delivered his promissory note to Kincheloe for their hire, and that said slaves were delivered by Kincheloe into the possession of Gratz, in Lafayette county; that in May, 1859, Gratz, being indebted to plaintiff, transferred the unexpired term of the hire of said slaves to him, and delivered possession thereof; that afterwards, in May, 1859, Dickenson came to Lexington and requested plaintiff to give up the possession of the slaves for Kincheloe, which being refused, it was proposed and agreed to that the matter be submitted to arbitrators; that said arbitration was accordingly entered into, and the slaves awarded to plaintiff for said unexpired term, which decision was mutually accepted by them as a final settlement of the matter in dispute. The petition further alleges that on the night of the following day on which the arbitration was had, defendant Dickenson wrongfully and secretly decoyed said slaves out of plaintiff's possession, and took and delivered them to the

defendant Kincheloe; and that said defendants tortiously converted the possession of said slaves to their own use, and still keep possession of them from plaintiff, whereby he was damaged, &c.

The answer admits that Gratz hired from Kincheloe, about the time stated, the slaves in controversy, but denies that they were hired in the manner or upon the terms alleged; that said Kincheloe hired said slaves to Gratz to labor for him until December 25, 1859; and it was expressly stipulated in said contract of hiring that said slaves should be kept by said Gratz in the town of Berlin, Lafayette county, and not elsewhere, and that, in case they were removed from Berlin and especially to Lexington, Kincheloe might terminate the hiring and reclaim them; that the slaves were removed to Lexington by Gratz or plaintiff, or both, in violation of said agreement, and that plaintiff was well apprised of the terms of said contract of hiring; that the slaves were obtained from Kincheloe by plaintiff and Gratz with a knowledge of the latter's insolvency and with a fraudulent intent to deprive Kincheloe of their services. Kincheloe denies any knowledge of Dickenson's agency in taking the slaves from plaintiff's possession, and of the arbitration respecting them; denies that Dickenson had any authority from him to submit the matter to arbitrators. The defendants deny that the slaves were brought into Carroll county by Dickenson and delivered to Kincheloe, and that they were converted by them to their own use wrongfully or otherwise as charged, and deny that they withheld said slaves from plaintiff's possession. Kincheloe " admits that the slaves have been in his possession since some time last May, (1859,) and are now in his possession." " And these defendants aver that said Kincheloe's aforesaid possession of said slaves has always hitherto been and still is rightful and lawful."

From the facts the evidence conduced to prove and those admitted by the pleadings, it appears that there was a hiring of the slaves for one year by Kincheloe to Gratz; that pos-

session was delivered to Gratz, who within a few months thereafter transferred or hired them for the remainder of the year to the plaintiff, and that while in his possession they were wrongfully taken therefrom by the agency of the defendant Dickenson, and soon thereafter were in possession of Kincheloe on his premises in Carroll county. This last fact is admitted by the answer, and it is claimed to be a rightful and lawful possession. There was also some evidence that Dickenson was Kincheloe's agent in hiring the slaves.

Of the instructions given for the plaintiff, the third only is excepted to. This instruction declares that if the jury believe the plaintiff and defendants submitted the matter in dispute, as to the possession of the slaves for the unexpired term of hiring, to arbitrators selected by them, and an award was made, of which they were notified, and it was against the defendants, they had no right afterwards to take said slaves from plaintiff's possession until after the expiration of the term of hiring. It is insisted that there was no evidence, as to Kincheloe, on which to base this instruction, and it should, therefore, have been refused. It may be conceded that there was no evidence of authority from Kincheloe to Dickenson to enter into an arbitration, yet we do not see that the jury could have been misled, or that Kincheloe was prejudiced; it was a mere abstraction which, under the pleadings, was not decisive of the questions at issue and did not involve the merits of the case. If there was no evidence whatever on which to base the instruction, as is maintained, it can scarcely be presumed that the jury paid any attention to it or were influenced by it in giving their verdict. And if it be said that the court, in giving it, must have assumed that there was some evidence to warrant it, and that this may be presumed to have had its influence with the jury, still whatever may have been their conclusion on this point, it left the question on which depended the plaintiff's right of recovery untouched. Taking the hypothesis of the instruction to be true, the plaintiff was not therefore entitled to a

verdict; it was nothing more than the assertion of a legal proposition, correct in the abstract, but of no practical bearing upon the case.

Instructions numbered five and six, asked by the defendants and refused, it is conceded by counsel, were not warranted by any evidence in the cause. But it is contended that the court erred in refusing instructions two, three, seven, eight and nine, and in giving the tenth on its own motion. The seventh declares that the rights of Kincheloe were not affected by the arbitration, unless there was evidence to satisfy the jury that he authorized it to be entered into, or after the arbitration was had he adopted and ratified the award therein made. The ninth declares that although Dickenson may have been Kincheloe's agent to hire and did hire the slaves to Gratz, he had no authority as such agent to enter into the arbitration. The point involved in these instructions has been sufficiently noticed in the observations made on the third instruction given for the plaintiff.

The eighth instruction states the hypothesis of a mere possession by Kincheloe as a deduction or conclusion, and the only one that could be legitimately drawn from the evidence in the cause, and of course excluded from the consideration of the jury any and all other facts which the evidence may have conduced to prove. It presents rather a comment on the evidence, selecting a single fact, which it assumes to have been proven, and tells the jury that this fact is not enough to render Kincheloe liable. Whether it was a mere possession or not, or such as showed an assent to the alleged wrongful act of his co-defendant, was for the jury, from a consideration of all the facts in the case, from considering how and when it was obtained, and the circumstances under which it was transferred from the plaintiff to Kincheloe.

The fourth instruction given for the defendants and the tenth given by the court on its own motion, though differing slightly in the phraseology from the second, which was refused, are substantially and in legal effect the same. At least, we do not perceive any inconsistency in the principle of

34—VOL. XXX.

law set forth in them. The liability of Kincheloe is made to depend, in the tenth instruction, on his authorizing the alleged wrongful act of Dickenson in taking the slaves, or afterwards in withholding them from the plaintiff; and by the fourth, which was given for the defendants, he must have authorized or knowingly ratified such tortious act. Possession is either rightful or wrongful, and he who being in possession of property of which the true owner has been wrongfully deprived, withholds it from him, knowing that he has no rightful claim to it, may be supposed to have assented to the wrongful act of another, by which such possession was obtained.

It is further maintained that there is no evidence whatever to implicate Kincheloe in the transaction, or to connect him with it in any manner so as to create a liability, and that the third instruction asked by the defendants, which declares this proposition in substance, should have been given to the jury. We think it clear that the jury may have well inferred a contract of a general hiring from year to year, from the facts in evidence, particularly Winsor's testimony, and the admissions in the answer. The petition alleges a hiring of this character, and the answer admits a contract, but says it was a hiring upon certain terms and conditions, whereby the defendant Kincheloe could have terminated it and reclaimed the slaves. It is not pretended that there is any evidence whatever of such an agreement as the defendants allege, and the *onus* was of course on them to establish it. The hiring for a year being shown and the delivery of possession pursuant thereto being admitted or not denied, Gratz was the owner of the slaves for that period, and held them with all the rights incident to that kind of special ownership. Being thus in possession lawfully acquired, Gratz had a right to transfer the unexpired term to the plaintiff. The slaves were transferred to him, and soon thereafter were by the wrongful act of Dickenson, as the evidence tended to show, removed from his possession and found with the defendant Kincheloe.

But it is contended that there is no evidence connecting Kincheloe with this act of Dickenson, either as an actual participant in it or as one assenting to it after it was committed. The counsel ventures an explanation to account for Kincheloe's possession by supposing that the slaves may have voluntarily returned to his premises in a day or two after they were alleged to have been decoyed, he knowing nothing of the manner in which they left the service of plaintiff; and that upon this hypothesis he was-under no legal obligation to send them back. This hypothesis is not only unsupported by evidence but contradicted by the facts in the case. The jury, we think, could have reasonably made but one inference as to the manner in which the slaves got into Kincheloe's possession. The testimony of Tweedy, Hale and Scott is as strong as circumstances could well make it. If, therefore, the evidence tended to prove such a contract of hiring as already stated, the slaves were Anderson's or plaintiff's property for one year; and there being no pretence that they were reclaimed by Kincheloe under the contract he sets up, but being obtained by him through the wrongful acts of Dickenson, before the expiration of the term of hiring, he, Kincheloe, must have known that his possession was not a rightful one. Looking at all the evidence in the case; considering the agency Dickenson seems to have had in the business, commencing with the hiring of the slaves to Gratz, and continuing his connection with it in some capacity or other until their disappearance from plaintiff's possession; his evident participation in this last transaction; the appearance of the slaves so soon thereafter at Kincheloe's, and his admitted possession of them from about that time; the obvious motive to regain them by reason of the admitted insolvency of Gratz, it is impossible to say that there was nothing in all this from which a jury of practical men might have concluded that Kincheloe had knowledge of Dickenson's agency in removing the negroes from Anderson's and that he assented to it.

Judgment affirmed; the other judges concurring.