TAYLOR *et al.* v. SCHERPE & KOKEN ARCHITECTURAL IRON COMPANY, *Appellant*.

Division One, March 10, 1896.

1. **Evidence: INTENTION.** It is competent to inquire of one his intention in doing an act, where such intention is in issue.

2. ——: ——: NEGLIGENCE. In an action for injuries from being run into by a horse and buggy negligently driven by defendant's servant, a refusal to allow the latter to testify whether he willfully ran into plaintiff was proper where the only averment in the petition on that issue was an argumentative one that the injuries could not have been inflicted save through "the gross mismanagement and carelessness amounting to criminal neglect" of the servant, especially where the plaintiff at the trial disclaimed that he contended that the servant acted willfully.

3. ——: ——: ——. Evidence, in such action, by defendant's servant that the horse was running away when the accident occurred, corroborated by other witnesses, does not warrant the direction of a verdict for defendant where there is testimony for plaintiff that the horse was at the time going only at a fast trot, was turned aside just before the accident to avoid collision with other vehicles, was stopped a short distance beyond, and that the servant did not alight to repair the break in the harness which he claimed was the real cause of the runaway.

4. Practice: INSTRUCTION: PUNITIVE DAMAGES. An instruction *held,* under the allegations of the petition, not to permit the recovery of punitive damages.

5. ——: ——: REFERRING JURY TO ISSUES. An instruction is not objectionable as referring the jury by the expression "in direct consequence of the acts herein complained of" to the petition for the issues, it appearing that the expression referred to acts complained of and already mentioned in the instructions.

6. ——: ——: PERMANENT INJURIES. An instruction in an action for personal injuries, requiring the jury in estimating the damages to include permanent injuries is not objectionable because of the use of the term "permanent" when there was no evidence of permanent injuries, where it is modified by the expression "as you may believe from the evidence."

7. ——: ——: ASSUMING FACTS. The court, in giving instructions, may assume as proved matters of fact which both parties during the trial have assumed and treated as true.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*B. Schnurmacher* for appellant.

(1) The action being based on the charge that the plaintiff, Mary Taylor, was injured through negligent,

careless, and reckless driving of defendant's servant, and all of the evidence taken together having failed to establish that charge, but proving on the contrary that the defendant's servant instead of driving the horse, was being run away with at the time, and was exercising every reasonable effort to avoid doing injury, the court should have sustained the demurrer to the evidence and should have directed a verdict for defendant. *Rutledge v. Railroad*, 123 Mo. 121; *Hyde v. Railroad*, 110 Mo. 272. The evidence of negligence offered by plaintiffs was of a negative character; the positive evidence offered by defendant showed there was no negligence. Upon this state of facts a peremptory verdict for defendant was highly proper. *Hayes v. Railroad*, 51 Mo. App. 438. (2) The court erred in refusing to permit the witness Jentzsch, defendant's employee, to testify whether or not he had intentionally driven into plaintiff. The petition alleges that the accident could not have occurred "save through the gross mismanagement and carelessness amounting to criminal neglect on the part of the servant of defendant." This was equivalent to an allegation that the injury had been wantonly and intentionally inflicted. Defendant was therefore entitled to show by its employee the contrary. (3) The court erred in the giving of instruction number 1 for plaintiff, in that it submitted to the jury the question of whether or not the defendant "carelessly and negligently drove and managed said wagon and horse." There was no proof of carelessness or negligence and therefore nothing in the evidence to support this instruction. (4) The court erred in giving instruction number 3 on the measure of damages on behalf of the plaintiffs. *First.* This instruction assumes that there was physical injury inflicted on plaintiff and that she endured mental anguish, although these facts were put in issue by the

pleadings and left in doubt by the proof.    *Second.*
The instruction failed to point out to the jury the
proper elements of damage in the event of a finding
for plaintiffs.    *Third.*  The instruction is further erro-
neous in referring the jury to "the acts herein complain-
ed of."    *Fourth.*  It was error for the court to warrant
the jury by this instruction to add anything to their
verdict for permanent personal injuries.    There is no
evidence in the case tending to show any damage or
injury to plaintiff Mary Taylor, permanent in its char-
acter, and therefore that much of the instruction is
without support in the proof.    (5)    The court erred in
overruling the defendant's motion for new trial, because
the verdict is against the evidence; because the court
erred in excluding the testimony of defendant's em-
ployee upon the question of intention, and because the
court erred in its instructions.

*Edmond A. B. Garesche* and *Frank A. Hobein* for
respondent.

(1) All of the facts prove that the horse was not
running away, and that the appellant's servant had
such control of him as to have been able to avoid the
accident by the use of ordinary care.    To support his
argument to the contrary, appellant's counsel has been
forced to ignore the facts as they appear in the record;
to rely upon inferences or opinions of witnesses, which
were in no sense competent, and which were opposed to
the facts to which these very witnesses testified and
finally to deny to the jury the right to draw inferences
themselves adverse to the positive statement of the appel-
lant's servant, whose recklessness caused the injury to
respondent.    "While negligence is an affirmative fact
to be established by proof, yet that proof may often be
supplied by reasonable inference from other facts in

evidence." *Rutledge v. Railroad*, 123 Mo. 121–136. "A jury is not bound to credit the testimony of unimpeached witnesses, if there be circumstantial evidence inconsistent with such evidence." *Hill v. Scott*, 38 Mo. App. 370. Even in criminal cases, cases involving liberty and life, this court has repeatedly ruled that, if a party testify directly in the face of, and in opposition to, obvious physical facts, neither courts nor juries are bound to stultify themselves by giving credence to such testimony. *Baker v. Railroad*, 122 Mo. 593; *Hunt v. Railroad*, 14 Mo. App. 160. In such matters courts must defer to the findings of jurors, as it is their peculiar province to determine them. *Peck v. Railroad*, 31 Mo. App. 123; *Tyler v. Hall*, 106 Mo. 313; *Dowling v. Allen*, 102 Mo. 213. (2) There was no issue framed by the pleadings in this case justifying the assumption that appellant's servant was charged with a willful premeditated tort. The allegation in the petition upon which appellant's counsel depends to support this branch of his argument was a mere recital, and the answer being a general denial no such issue as he contends for was framed by the pleadings. Bliss on Code Pleadings, sec. 318. (3) Where in an action for damages, a party does not ask an instruction, for the guidance of the jury, defining the measure of damages, he will not be in position on appeal to criticise one given for the other party. *Browning v. Railroad*, 124 Mo. 55. (4) Where no evidence is offered to disprove facts testified to, the court should, in the instructions, assume their truth. *Fullerton v. Fordyce*, 121 Mo. 1. The assumption of a fact, in an instruction, of which there is some proof, where there is no countervailing evidence as to that fact, is not reversible error. *Dickson v. Railroad*, 104 Mo. 491. (5) The objection that the instruction is too general in its scope, and does not

properly advise the jury of the proper elements of damage which they are to take into consideration, is answered by the *Browning* case, *supra*. In addition, the very cases the appellant cites in his brief support the position that there must be other concurrent error to effect a reversal on this ground. *Stevens v. Railroad*, 96 Mo. 207; *Hawes v. Stock Yards Co.*, 103 Mo. 60; *McGowan v. Co.*, 109 Mo. 518. (6) The words "herein complained of" at the end of the instruction were used only for the purpose of shortening it and could not possibly have been understood by the jurors, to refer to the petition. The adverb herein, when viewed from a grammatical standpoint, had reference to the instructions, and, if not to them, then it was simply meaningless and no error was committed. But even though it were true as contended, yet it might still be very properly said, "The reference of a jury to the pleadings only for the purpose of shortening the instruction is perfectly proper." *Britton v. St. Louis*, 120 Mo. 437; *State v. Scott*, 109 Mo. 226; *Corrister v. Railroad*, 25 Mo. App. 619. (7) The evidence was unequivocally to the effect that the injury to plaintiff's womb was permanent and that she would never again be able to conceive or bear children. Furthermore, that this condition was beyond medical skill to such an extent that nothing can now be done to arrest her irregular menstruation, with all of its attendant injury to her constitution and health. Lastly, the instruction is supported by precedent in this court, and the court of appeals. *Russell v. Columbia*, 74 Mo. 480; *Hyatt v. Railroad*, 19 Mo. App. 287; *Ross v. Kansas City*, 48 Mo. App. 440. (8) The trial court committed no error in overruling the appellant's motion for a new trial. The verdict was for the right party, and should not have been disturbed for technical error had any such

been committed, which we most emphatically deny was the case.

ROBINSON, J.—This action by plaintiffs as husband and wife was instituted to recover damages for alleged injuries received by the wife on one of the public streets of the city of St. Louis, November 29, 1890, through the alleged careless driving of a servant of defendant.

The averments of the petition, so far as they relate to the negligence charged, are, "that while plaintiff Mary Taylor was passing along what is known as the sidewalk of a certain public street in the city of St. Louis, known as Chouteau avenue, and in the vicinity where the Missouri Pacific Railroad tracks cross said Chouteau avenue, the servant of defendant so carelessly drove and managed a horse and wagon used by him, and drove the same at such a rapid gait over and along said Chouteau avenue and over and upon said portion of said street which was known as the sidewalk thereof, as aforesaid, that by reason of his negligence in said respect, plaintiff Mary Taylor was struck by said wagon and horse as aforesaid and violently dashed and thrown to the ground. That while plaintiff was passing along what is known as the sidewalk of said public street as aforesaid she had no reason to apprehend any danger from said wagon or horses as aforesaid, nor could said injury have been inflicted save through the gross mismanagement and carelessness, amounting to criminal neglect, on the part of the servant of defendant as aforesaid."

The defendant, for answer, filed a general denial. At the trial, among other facts, the testimony disclosed that while the plaintiff, Mary Taylor, was walking west on Chouteau avenue along the north side of the street near to where Chouteau avenue crosses the Mis-

souri Pacific tracks she was run into by a buggy and horse belonging to defendant and being used by one of its servants, in the prosecution of its business, and that she received very severe injuries, as a result of which, the attending physician says, ''she shortly afterward gave premature birth to a child, which left her womb and uterus in an abnormal condition and caused irregular and long periods of menstruation.'' And further, the doctor says: ''If Mrs. Taylor was a strong, healthy woman, as she claimed to have been, before the injury, her present condition is the probable result of, and due to, her injuries, and that there is now no certainty that she will ever regain perfect health.''

Dr. Bernays, called as a medical expert, testified as follows: ''I then examined her womb and found that the womb was injured * * * From the history of her case and the examination which I made I should unhesitatingly say that the pains Mrs. Taylor complains of in her back and the lower portion of her body were caused by an enlargement of the womb. It is the effect of pressure upon the womb that caused the falling down. Considering the facts of the injury sustained by Mrs. Taylor the disease of the organs that I found was probably caused by this miscarriage. * * * I do not believe she will ever recover until the time her monthly sickness ceases. The sexual life of a woman is from forty-five to fifty years of age. She will not probably recover until her sexual life is over. I do not think her womb will ever come down to its normal size before that time; that is the result of my experience no matter what kind of treatment you may give the case. * * * The enlargement of the womb causes discomfort to woman, it causes frequent hemorrhages, it prevents pregnancy, and gives rise to a whole train of nervous ailments, headaches, and other complaints.''

Mrs. Taylor, after giving an account of how and

where she got hurt, says: "I was at that time pregnant about six months and a half.  They took me away and undressed me and put me to bed and Dr. Barbee came and examined me and bound up the places where I was hurt; he came every day.  When I had a miscarriage Mrs. Kennell waited on me; this occurred some days after the injury.  I was totally helpless and suffered day and night.  I could not move myself at all.  I suffered all over my body.  *  *  *  My child was born dead and was also decomposed.  Before that I had always been in the best of health, and had never suffered similar pains before; in fact never had any pains at all.  I have never been well since the injury; every week I grow worse.  It affects me in limbs, in my heart, in my lungs, and also through my lower parts.  I suffer terrible pain.  Up to the time of this accident I was strong and healthy.  I kept house and had no servants. I did all my own work up to the time of my injury.  I did the washing and ironing for my family.  The injuries I received also affect my menses.  I have a kind of female trouble since.  Before the injury I never had any trouble with my menstruation, but since, it has been very irregular.  Sometimes it would be two weeks, sometimes three weeks, and would last as long as eight weeks.  This condition would leave me weak and hardly able to live."

The injuries that plaintiff received, and the after effect of them, as well as the deductions and inferences drawn as to the probable continuation and extent, were in nowise assailed or controverted, but defendant's sole defense and reliance as disclosed by the testimony was to show its nonliability for the injury, by reason of the fact that the horse driven by defendant's employee became frightened, scared, and ran away and into plaintiff, on account of the happening of a combination of causes and circumstances, over which neither

the driver nor defendant had any control, or could reasonably have anticipated.

The case was tried by a jury under instructions from the court and resulted in a verdict for plaintiff for $3,500, on which in due time a judgment was rendered, and, after unsuccessful effort to have same set aside, defendant prosecutes this its appeal, assigning as the first ground of error the refusal of the court to admit proper and competent evidence offered in behalf of defendant.

When the witness Jentzsch, who was driving the horse and buggy owned by the defendant at the time plaintiff was injured, was on the stand he was asked this question: "Now I will ask you whether or not after seeing the lady you intentionally ran her down," to which objection was made by plaintiffs' attorney on the ground that no claim was made that the witness willfully and deliberately ran over plaintiff, but that she was simply injured as a result of his negligence, which objection was sustained by the court with these remarks: "I think there is a difference between a negligent act as it is charged in the petition, and the willful commission of an act, and in view of that fact and the further one that counsel for plaintiff states that he makes no claim that the act charged as negligence was willfully done, I will sustain the objection to the question."

When the intent with which any act was done is involved it is always proper to ask the party charged what that intention was, is unquestionably true; but in this case no such charge was made against defendant, we think. The clause of the petition under which counsel for defendant contends he should have been permitted an answer as to the witness's intention was as follows: "Nor could said injuries have been inflicted, save through the gross mismanagement and

carelessness, amounting to criminal neglect, on the part of the servant of defendant as aforesaid.'' This followed the general averments of the petition stating when, how, and by whom, and under what circumstances plaintiff was injured and could not be called and treated other than as an argumentative recital, and in no sense issuable. Nothing definite is asserted, hence nothing is required to be denied. A denial not being required, it was no error of the court to deny defendant's witness to state with what intent or want of intent he ran over plaintiff.

A charge of criminal neglect in a petition would not amount to a charge of criminal intent, authorizing a jury to assess punitive damages by way of punishment to defendant. Again, defendant was left without grounds of complaint on account of the action of the court in refusing his witness to testify as to the matter of his intent, after the disclaimer made by the plaintiff in open court and the adoption by the court of her view as to the scope of the charge of the petition. No damage could befall defendant, beyond the horizon of the court's view of the petition and the testimony confined thereto.

Appellant next contends that the trial court committed error in refusing its peremptory instruction to return a verdict for defendant, in that defendant's driver, who was corroborated by several other witnesses, testified that his horse was running away with him at the time the plaintiff was struck and injured, and no other witness testified to a contrary state of facts.

While it is true that the driver testified that his horse took fright at a train on the Frisco railroad some two blocks from the place of the injury, and that it shied to one side and broke the back strap of the harness so that when it started down the ascending grade of the

road he was unable to check or hold him back, and that at the time he ran into plaintiff his horse was running away, and was beyond his control, and no witness for defendant states positively that the horse was not running away. at the time, or was not within the control of defendant's driver, yet several witnesses called by plaintiff say, that the horse was not running, in the sense that the term is ordinarily used in speaking of runaway horses, but that it only came down the street in a fast trot, and also testify to other facts and circumstances from which the jury might reasonably infer that defendant's driver's horse was not beyond his control and was not in fact running away at the time that plaintiff was struck by his buggy.

Mr. Childs, a street car conductor, who had stopped his car just opposite to where the plaintiff was injured, testified in behalf of plaintiff as follows: "I know the lady was knocked down that day. The wagon hit her. I saw it hit her. She was in the path there along the sidewalk. I saw her fall. The man who struck her did not offer to come back and pick her up, but he just drove on. We had but one car on, the motor, and behind this car was a wagon with two horses to it; this one that ran over the lady was coming behind that with one horse, when I saw him. He was coming right down the track, and he turned after he saw we had stopped, and the other wagon stopped, he turned to one side. He was going pretty rapidly at a fair trot. I could not say how fast he was going, but he hit the lady and knocked her down; after he hit her he went ahead a piece across the railroad crossing and then he stopped and looked back; then he started and went ahead up near Market street crossing, and then he stopped again and looked back, and then he went whirling around the corner." Again he said: "I can not say if he had his horse under perfect control. If

his horse was running away it was not going very fast. It was only going at a fast trot. He turned out of the track to the north, and in running north his wagon hit this woman. * * * I did not see that the harness was broken. * * * I do not remember of hearing any engine whistle or bell ring as we crossed the Frisco tracks that day, just before the accident.''

Several other witnesses testify to quite a similar state of facts, but none say in positive terms that defendant's driver's horse was not running away at the time of the injury, or that he did not have the horse under perfect control. They simply give the gait at which the horse was traveling; the fact that he was turned to one side when it was necessary to avoid collision with the wagon in front of him; that the horse was stopped and restarted at frequent intervals just after the accident; that the driver never got out to repair the harness that he claimed was broken, and that caused his horse to become unmanageable, but continued his reckless driving just the same as if nothing was wrong with the harness or the horse, and gave the manner and conduct generally of the driver on that occasion, leaving the jury to draw their own inference from the facts and occurrences just before and immediately after the injury, as they saw them.

Plaintiff knew nothing of the manner of the occurrence of the injury as she was walking in the same direction the defendant's horse was being driven, and was struck before she was aware of danger, and after being struck was so bewildered as not to be able to take in the surroundings.

While in this case the plaintiffs charge that defendant's servant negligently and carelessly drove defendant's horse and wagon in such a manner as to run over and injure her, and that charge necessarily implies that the servant, at the time, had control of the animal

and managed him negligently, or that through some fault of his he lost such control, and while it is true that negligence will not be presumed, but must be established by proofs, we think this case has been fairly tried, and that all these requirements of plaintiff have been exacted and all presumptions in favor of defendant have been indulged in the instruction submitted by the court for the guidance of the jury in the arrival at, and formation of, their verdict.

The jury were not bound by the testimony of defendant's driver or any and all other witnesses who testified in his behalf, as to the cause of the fright of the horse, the fury of its speed down the hill, just before it ran the buggy into plaintiff, the unmanageable condition of the horse or the reason given therefor by him; but in view of all the circumstances and facts in evidence had a clear right to weigh the probability of their statements in that regard in connection with all other facts shown in the case, and from the whole deduce what in their judgment was a reasonable inference from the facts shown. The trial court would not have been authorized to have told the jury that they could not infer that the horse was not running away, or that he was not under the control of the driver (which would have been the effect of the peremptory instruction asked by defendant at the close of the testimony) in view of the fact that several witnesses called for plaintiffs, say that the horse was only in a trot at the time plaintiff was struck, that it was turned to one side with apparent ease to avoid collision with a heavy two horse wagon just ahead of it in the road; that within a short distance from the place of the injury, the horse was stopped and started up again with a slap of the reins without the driver's getting out to repair the harness, which, on account of a break, he claimed

had been the cause of the runaway in the first instance, and the other facts detailed by plaintiff's witnesses.

While negligence is an affirmative fact to be established by proof, this court has frequently held "that proof may often be supplied by reasonable inference from other facts in evidence." There was no error in the refusal of defendant's peremptory instruction.

Further complaint is made by appellant of the third instruction given in behalf of plaintiff touching the measure of damages in the event of a verdict for plaintiff, which reads as follows:

"The court instructs the jury that if they find for the plaintiff, in estimating her damages they should take into consideration, not only plaintiff's age, the physical injury inflicted, and the bodily pain and mental anguish endured, but also any and all such permanent personal injury as you may believe from the evidence will result to her in the future *in direct consequence of the acts herein complained of.*"

While the instruction is not happily worded, and might be subject to slight verbal criticism, and did not restrict the jury in direct words, to the exact limit within which they were to act, still we think no prejudicial error was committed in its giving, nor was defendant in the least injured thereby.

We think that appellant's suggestion that the jury by this instruction were led to understand and probably were induced to take into account, by reason of its closing paragraph, that allegation of the petition, "nor could plaintiff's injury have been inflicted save through the gross mismanagement and carelessness amounting to criminal neglect on the part of the servant of defendant as aforesaid," and allowed, in addition to compensatory damages, exemplary damage for the servant's supposed criminal negligence, is without merit. Neither the language of the instruction, the language of the

petition, or the facts developed at the trial, would warrant the jury in taking into account in the formation of their verdict, other than compensatory damages; and, in addition, there was an absolute disclaimer by counsel for plaintiff in the presence of the jury of anything other than compensation for the injury to his client, when the question was propounded to defendant's servant "if he intentionally ran plaintiff down." And the court in passing upon the question in the presence of the jury, declared that the charges of the petition were for simple negligence, and denied to defendant's servant the right to answer the question on that ground.

But without regard to what was said or done to give information to the jury as to the scope of the issue to be tried, the instruction in and of itself was in no wise misleading or erroneous by requiring a reference to the petition to find the issues to be determined. The closing paragraph of the instruction, "*in direct consequence of the acts herein complained of,*" referred not to the petition but to the acts theretofore mentioned in the instruction. The instruction, in that regard, so far as it went, was certainly correct. If defendant had desired an instruction negativing items of damages not allowable, out of a superabundance of caution, it was his duty to have asked it. Failing to do so at the trial of this cause, he should not now be heard to complain on appeal.

Again, appellant complains that by this instruction the court has committed the further double error of having the jury award damages for an injury as permanent, that no witness has said was permanent, and in the second place for assuming that the alleged injuries were permanent instead of submitting that question, if it be one of fact, to the jury for their determination.

No witness in exact terms has said that the injuries to plaintiff were of a permanent character, in that they would never end, or that they would remain with her to the end of her life, but Dr. Barbee, plaintiff's attending physician, says "there is no certainty that Mrs. Taylor will ever regain perfect health," and Dr. Bernays, the medical expert who examined plaintiff, says "that I do not believe plaintiff will ever recover until her sexual life is over, which is from forty-four to fifty years of age with women generally. I do not think her womb will ever come down to the normal size before that time, no matter what kind of treatment you might give her." While this instruction uses the words "permanent personal injury," when qualified and limited by that part of the sentence following "as you may believe from the evidence will result to her in the future," there is but little significance or meaning to the word. The after qualifying part of the sentence robs the word of its ordinary derivative significance ("per menese" to remain through to the end, to last, lasting) and confines and limits it in time to such injuries as the jury may believe will result to plaintiff in the future according to the evidence developed at the trial. In fact, the word permanent could be left out of the instruction altogether without in anywise affecting the sense of it, and when treated as meaningless, it certainly should be held as harmless.

Lastly, if the instruction did assume, as contended by appellant, that the alleged injuries of plaintiff were permanent (in the sense of meaning for a long duration of time, which could be its only meaning in view of the facts in the case and its following qualifying words in the instruction) it would not amount to reversible error under the circumstances. This court has frequently held, to sustain verdicts rendered upon instructions wherein the trial court has assumed the truth of

a proposition or fact which has been established by unquestioned testimony of the party alleging it, and while not admitted by the adverse party in express words has been treated throughout the trial by him as existing, that no reversible error was committed by the court's assumption.

While the question of plaintiff's injuries and the extent thereof was put in issue by the general denial set up in defendant's answer at the trial, the real contest was confined so far as defendant's testimony went, to its entire non liability. Not a word of testimony was offered to disprove any fact testified to by plaintiff or her witnesses as to the injury, its character, extent, and probable duration. During the entire progress of the trial, the counsel for defendant, by the very manner of the examination of the witnesses, seemed to recognize and concede both the injury and the probable extent thereof, and sought only to avoid its consequences to his clients by endeavoring to show defendant's nonliability by reason of the unmanageable condition of the horse driven by defendant's servant, at the time plaintiff received her injuries. What all parties to a litigation treat and assume as a fact during the entire progress of the trial before the court, the court, without error, may assume for convenience in drafting its instructions to the jury, that the issue upon that fact has been withdrawn from the controversy, and confined to the narrow compass embraced within the radius of the testimony offered.

It follows from what has been said that the judgment of the trial court should be affirmed, and it is so ordered.

MACFARLANE, J., concurs. BRACE, C. J., and BARCLAY, J., concur in the result.