DAVID T. CHENOWETH, Respondent, v. A. G. SUTH-
ERLAND, Appellant.

Kansas City Court of Appeals, January 6, and March 2, 1908.

1. MASTER AND SERVANT: Pleading: Petition: Code: Com-
mon Law. A petition somewhat inartificially drawn is held to
state a cause of action under the code which does not require
the same formal precision of statement demanded by the
common law.

2. ————: Safe Appliances: Evidence: Derrick. The master
should use reasonable care to furnish appliances reasonably safe
for the purposes for which they are intended. *Held*, that the
evidence shows that the rope of a derrick was not inspected
with reasonable care.

3. ————: ————: Instruction: Defense. An instruction re-
citing all the facts necessary for a recovery and requiring that
they be found to be true, need not set up the defense relied
upon, since the finding of the matters mentioned exclude the
existence of the matters set up in the defense.

4. PERSONAL INJURY: Measure of Damages: Instruction:
Evidence. An instruction on the measure of damages is held
supported by the evidence as to the permanency of the injury
and its effect upon his earning capacity as well as internal
injuries, but to be error in submitting the injuries to the
plaintiff's spine, since there was no evidence to support that
claim and it therefore was calculated to mislead and confuse
the jury.

5. INSTRUCTION: Harmless: Test: Reversal: Evidence. The
test as to whether the cause should be reversed or not for
giving an instruction unsupported by the evidence is whether
it is harmful or harmless, that is, its probable influence on the
minds of the jurors.

Appeal from Jackson Circuit Court.—*Hon. John G.
Park*, Judge.

REVERSED AND REMANDED.

*Warner, Dean, McLeod, Holden & Timmonds* for
appellant.

The petition fails to state a cause of action in that
it alleges no negligence, and the court erred in overrul-

ing the objection made at the beginning of the trial to the introduction of any evidence under the petition. This objection was also called to the attention of the trial court by demurrer to the petition and in the motion in arrest of judgment. Gurley v. Railroad, 93 Mo. 450; Sullivan v. Railroad, 97 Mo. 117; Jacquin v. Cable Co., 57 Mo. App. 331; Shuler v. Railway, 87 Mo. App. 622; Hill v. Railway, 49 Mo. App. 531; Carpenter v. McDavitt, 53 Mo. App. 400; Mack v. Railway, 77 Mo. 234; Senate v. Railway, 57 Mo. App. 223; Neeton v. Railway, 116 Mo. App. 281. (2) The court erred in refusing to instruct the jury to return a verdict in favor of the defendant. The evidence in the case is not in conflict; it proves but one state of facts which is as plaintiff told it. (3) It is the master's duty to use reasonable care to furnish appliances reasonably safe for the purpose for which they are intended to be used. Any appliance may become unfit or defective for an unauthorized or excessive use and for such an use the master is not liable. Moran v. Brown, 27 Mo. App. 487; Holmes v. Brandenbaugh, 172 Mo. 53; Tabler v. Railway, 93 Mo. 79; Friel v. Railway, 115 Mo. 507; Steinhauser v. Spraul, 114 Mo. 257; Maxfield v. Graveson, 131 Fed. 841; York v. Railroad, 117 Mo. 405. (4) The court erred in giving to the jury plaintiff's instruction numbered "3-P." This instruction assumed to cover the whole case and yet it wholly omits and overlooks the defense. Furthermore, it submits a wholly different case than that made by the evidence introduced by the plaintiff. Wood v. Bobbst, 56 Mo. App. 433; Mallman v. Harris, 65 Mo. App. 127. (5) Plaintiff's instruction "10-P." was erroneous in several particulars. It submitted the question to the jury, (1) of injury to the back and spine; (2) of internal injuries; (3) of permanent injuries, and (4) of decreased earning capacity. Instructions of this character have always been held to be erroneous. Fullerton v. Fordyce,

121 Mo. 1; Mammerberg. v. Railway, 62 Mo. App. 563; Culberson v. Railway, 50 Mo. App. 556; Slaughter v. Railway, 116 Mo. 275; Nixon v. Railway, 141 Mo. 440; Harper v. Railway, 70 Mo. App. 604; Evans v. Joplin, 76 Mo. App. 20; Stoetzle v. Sweringen, 96 Mo. App. 592; Kimble v. Railroad, 108 Mo. App. 78; Ballard v. Kansas City, 110 Mo. App. 391; Wilbur v. Railway, 110 Mo. App. 689; Smedley v. Railway, 118 Mo. App. 103; Steinmann v. Transit Co., 116 Mo. App. 673.

*Rush I. Fissette* and *Bird & Pope* for respondent.

(1) The petition states a cause of action. Czezewzka v. Railway, 121 Mo. 201; Evans v. Bank, 79 Mo. 182; Weaver v. Harlan, 48 Mo. App. 319; State ex rel. v. Johnson, 78 Mo. App. 573. (2) The court did not err in refusing defendant's peremptory instruction B. 1 Greenleaf, Ev. (14 Ed.), secs. 442, 443; Brown v. Wood, 19 Mo. 475; Imhoff v. McArthur, 146 Mo. 371, 377; State ex rel. v. Branch, 151 Mo. 642; Klockenbrink v. Railroad, 81 Mo. App. 354; Slorck v. Mesker, 55 Mo. App. 26. (3) The plaintiff made a clear case of negligence. 1 Labatt, Master and Servant, p. 208, n. 2; Same, pp. 338 and 344, n. 6. Where no inspections whatever are made, negligence is shown, and the case cannot be taken from the jury. 1 Labatt, Master and Servant, p. 337; Nicholds v. Glass Co., 126 Mo. 53; Gutridge v. Railroad, 105 Mo. 520; Coontz v. Railway, 121 Mo. 652. (4) The court did not err in giving plaintiff instruction 3P. 2 Thomp. Trials, secs. 2402, 2407; McGrew v. Railway, 109 Mo. 582, 590. (5) The court did not err in giving plaintiff's instruction 10P. Wendler v. Furnishing Co., 165 Mo. 538; Gordon v. Burris, 153 Mo. 233; Young v. Webb City, 150 Mo. 343; Taylor v. Iron Co., 133 Mo. 349. (6) The court did not err in refusing to give defendant's instruction C.

BROADDUS, P. J.—A decision of the case on a former hearing was set aside and a new hearing granted and the parties argued the same anew. Upon reconsideration we have adopted in the main what was then said with some modifications. It is as follows:

The plaintiff sues for damages for a personal injury received December 4, 1904, while in the employ of defendant at Rosedale, Kansas.

The defendant Sutherland was engaged in business at said place, operating a foundry and structural iron works. The plaintiff had been in his employ for several years as a machinist. On the day named plaintiff and about six other employees were engaged in moving the skeleton framework of a stationary engine from a building out into the yard where it was to be deposited upon a pile of I-beams. For the purpose of accomplishing the work a small push car with an iron skeleton frame was used, running upon a railway track in the yard. The engine frame was to be unloaded onto the I-beams by the aid of a derrick. There were four derricks of different sizes and strength on hand; the smallest of these was selected for the purpose, which was situated near the said pile of I-beams. The engine skeleton frame was about nine feet long and two feet wide and weighed about a ton. It is admitted that the derrick selected for the work was not of sufficient weight and strength to support with safety the whole weight of the frame. The operation was under the direction of Louis Althoff, the foreman of the gang of men. As the derrick was not sufficient to support the weight of the frame, it was the purpose of the foreman to only raise one end of it just high enough to allow it to be skidded over on I-beams placed under it onto the said pile. There is no question but what the men, including plaintiff, knew that defendant intended to unload the frame by raising one end of it so as not to have its entire weight upon the derrick, and to place I-beams under it as skids

so that it could be pried off onto the said pile.  Outside of what witnesses say in reference to the matter, the manner in which the men proceeded in the work was sufficient to impart that information.

The plaintiff testified that after a chain had been put around one end of the frame and attached to the derrick the men proceeded to raise it; that in raising it one end continued to rest on the push car; that when the end had been raised about fourteen inches the rope of the derrick broke and the frame fell causing his injury; that he did not see the foreman at the time, but supposed he was present, and did not know that he had been absent during the time they had been engaged at the work.  It is claimed by defendant that the men disobeyed the foreman's orders by raising the frame too high, thus throwing greater weight upon the derrick causing the attachment or ropes of the latter to break.

George Tucker, one of plaintiff's witnesses, testified that the foreman when they took the car out gave orders and instructions to one of the men by the name of Young not to raise the skeleton frame too high as he did not believe the derrick would stand it, and that he then left and went to the mill.  "He told us to lift it high enough to get two six inch I-beams under it to make skids."  He stated that it was raised higher, that they raised it and got the six inch I-beam under it and then Young ordered it raised higher, and it was then when the rope broke.  He testified that the rope was old, rusty and defective.  He stated that the men were at the time obeying the directions of Young.

Defendant's witness, Young, testified that when the foreman left to go and get the pinch bars they had just begun to raise the frame from the push car with the derrick; that their foreman said to them: "Just to barely lift it, not to lift the entire engine, because he did not think the derrick would stand it;" that after he left "the men began to raise it a little bit;" that "he

said only raise it partly until I get those pinch bars;" that he said, only raise it high enough to put the beams under the end of it; and that they raised the frame high enough for that purpose and put the beams under it, but continued to raise it for the purpose of making the work easier. This witness stated that the foreman did not direct him what to do in his absence, but that his orders were directed to all the men generally. Charles Otis, another of defendant's witnesses, corroborated the witness Young in the most important particulars.

The plaintiff testified that the derrick was attached to the frame in the following manner. One end of the chain was put around the cylinder at one end of the frame and the other end of the chain was fastened around "the lugs back, where the fly-wheel goes on" and hitched to the derrick. And another witness stated that the rope of the derrick was attached a little nearer to the end than to the center of the frame, and that when the frame had been raised at one end to the elevation at which the rope broke the other end was scraping the frame.

The verdict and judgment were for plaintiff and defendant appealed.

The first objection raised by defendant is that plaintiff's petition did not state a cause of action. The defendant has subjected plaintiff's petition to the utmost critical analysis and has come to the conclusion that it does not state a cause of action. Strictly speaking the pleading is somewhat unartificially drawn but we think it states a cause of action, under the code which does not require the formal precision of statement as at common law.

The negligence relied on by plaintiff was the defective and unsafe condition of the derrick, while the ground of the defense is that the injury was the result of the disobedience of the orders of the foreman in raising the

frame too high, thus putting too great a strain upon the derrick, which caused the rope to break. But the contention of the defendant is opposed to the laws of natural philosophy. The greatest strain upon the rope was at the beginning of the lift. Naturally as one end of the frame was being raised the force of gravity increased at the other and consequently as the one end of the frame was lifted, the weight upon the rope lightened, and this lessening would have continued until the frame had reached its perpendicular when there would have been no weight upon the rope whatever. It was not therefore any additional strain upon the rope that caused it to break, but its breaking must be attributed to its defective condition. Had the rope been sufficient in strength but without defect, it would not have broken under the circumstances. The result therefore must be attributed to a defect in the rope and not to the inefficiency of a sound one. It is to be inferred from what the foreman said that he considered the rope insufficient in strength to accomplish the purpose of raising the frame high enough to swing the weight off the car onto the I-beams, and not that he considered it insufficient because of its defects for that purpose, otherwise the inference would be that he had knowledge of its defective condition. After the derrick had proved sufficient to raise the frame high enough to put the skids under, the workmen might have very naturally concluded, as it had borne the strain thus far, it could with safety be relied on for further use, and, the foreman being absent, they raised it higher in order to facilitate the work. This action on their part was what men of ordinary prudence and caution would have done under a like condition. And the break in the rope is not to be attributed to the fact of the increase in the elevation of the frame, but to the defect in the rope. We therefore conclude that the evidence tended to show at least that the injury to the plaintiff was result of a defect in the rope and that the

failure of the defendant to inspect it before he applied it to the use in question made out a case for the jury.

It is well-established law that it is the master's duty to use reasonable care to furnish appliances reasonably safe for the purpose for which they are intended. This has so often been decided that a reference to the decisions is not deemed necessary. It must be admitted that the evidence tends to show at least that the derrick used was not reasonably safe and that in selecting it the master did not exercise reasonable care, as he failed to make any inspection whatever to ascertain whether or not it could be used in safety. Much of the defendant's brief is devoted to the question of the master's duty to his servant to supply him with reasonably safe instrumentalities for the performance of his work, but we do not think it responsive to issues of the case, and it will not therefore be commented upon.

Plaintiff's instruction numbered three is objected to for the reason, among others assigned, that it assumed to cover the whole case, whereas it omits the defense made, and that it submits a different case from that made by the evidence. As to this first objection, a statement of what it contains is a sufficient answer. It states after the usual preliminaries, in order for the plaintiff to recover, the jury should find that the rope of the derrick was old and defective, which was unknown to plaintiff; that the defendant knew of its defective condition, or might have so known by the exercise of reasonable care; and that the rope broke because it was old, worn and defective; and that thereby plaintiff was injured while he was acting as a reasonable and prudent person. It relates to all the facts upon which plaintiff predicates his right to recover, but it does omit to refer to the defense for the reason that if the facts to which the instruction apply are found to be true the matters set up in defense cannot exist, therefore it was not necessary to refer to them. We are unable to see any good grounds to

support the second objection to the instruction. Other objections to the instruction are answered by what has already been said generally about the case.

Plaintiff's instruction numbered ten submitted to the jury the questions of injury to his back and spine, of permanent injuries, and of his decreased earning capacity. It is claimed that there was no evidence that he had received internal injuries; that there was no evidence that his injuries were permanent; and none that his earning capacity had been permanently impaired. The evidence showed that plaintiff was hit on the top of his head by the metal rope when it broke and fell and that for a time he was unconscious. Dr. Longanecker, who attended him, stated that his brain was affected and that at one time he considered it advisable to trephine his skull, but finally concluded that it was unnecessary. The doctor further stated that plaintiff at the time was also complaining of an injury to his shoulder and elbow; that in his opinion his headaches were the natural and probable results of the blow he had received on the head.

The plaintiff's evidence tends to show that he was also struck on the shoulder; that he had headaches which interfered with his doing his work well or at all times; that his shoulder is weak. Mr. Tucker testified that before his injury plaintiff was a very bright looking man and did his work well, but now he was somewhat delinquent and lighter than before he was hurt, was paler and had a glazed expression in his eyes, and that he complained of headaches.

We think from the character of the injury and from the testimony of witnesses that there was evidence that plaintiff's injuries are permanent and that his capacity for earning wages in the future is also permanently injured. And an injury to the brain certainly ought to be classed as an internal injury. The injury to the skull was an external injury, but its resultant, the effect upon the brain, did not make it an external injury alone.

There was no evidence of injury to the spine and that matter ought not to have been submitted to the jury. The instruction in question requires the jury to find that there was an injury to plaintiff's spine in order that they might take such injury into consideration in making their verdict.

In Taylor v. Iron Co., 133 Mo. 349, objection was made to the following instruction, viz: "The court instructs the jury that if they find for plaintiff, in estimating her damages they should take into consideration not only plaintiff's age, the physical injury inflicted, and the bodily pain and mental anguish endured, but also any and all such permanent personal injury as you may believe from the evidence will result to her in the future *in direct consequence of the acts complained of.* The court held that, "While the instruction was not happily worded, and might be subject to slight verbal criticism, and did not restrict the jury in direct words, to the exact limit within which they were to act, still we think no prejudicial error was committed in its giving, nor was the defendant in the least injured thereby." In Schaefer v. Railroad, 128 Mo. l. c. 74, an erroneous instruction was given on behalf of the defendant as to the extent of its liability. The court held that the error was harmless because the jury found that the defendant was not liable.

In Alexander v. Railroad, 19 Mo. App. 312, where defendant was sued for killing plaintiff's steer at a public crossing, the evidence showed that neither the bell was rung nor the whistle sounded and defendant offered no evidence whatever on that issue. The court instructed the jury that it was the duty of defendant to both ring the bell and sound the whistle in approaching the public crossing. This was held to be wrong, as neither was done, the instruction was harmless and the defendant could not have been prejudiced thereby. In Morgan v. Railroad, 159 Mo. 262, an erroneous instruction was

considered. The court said: "The only errors we find in the instruction are, . . . first, the hypothesis that the men in charge saw the deceased in time to have averted the accident, and second, that it was their duty to have stopped the train in time. With those features eliminated, the instruction properly declared the law applicable to the evidence. But whilst those features of the instruction were inapplicable to the facts of the case, they were as to this case mere abstract propositions . that could not possibly have affected the verdict. There was no pretense that any man on the train saw the man on the track. The undisputed facts show that the trainmen had willfully placed themselves where they could not possibly see before them." In Lemon v. Lloyd, 46 Mo. App. 1. c. 456, the suit was begun in a justice's court on a special contract. The instruction complained of authorized the jury to return a verdict on *quantum meruit*. The court held that as there was no evidence of the reasonable value of plaintiff's services the jury must have found on the special contract, therefore the error was not prejudicial. In Anderson v. Kincheloe, 30 Mo. 520, it was held that the erroneous instruction "was a mere abstraction" and which under the evidence could not have misled the jury.

In Culberson v. Railroad, 50 Mo. App. 556, it was held as error to instruct the jury in estimating plaintiff's damages to allow any expense incurred for drugs or treatment by physicians when there was no evidence of any such expenditures. The court gave as a reason for holding that instruction error was that as the evidence showed that plaintiff had been treated by several physicians it left a way open to the jury to make a liberal allowance to pay doctor bills. In Slaughter v. Railroad, 116 Mo. 269, the court held that, "where the evidence of loss of time is excluded by the court because of the absence of the necessary averments in the petition, an instruction authorizing damages therefor is error." In

Stoetzle v. Sweringen, 96 Mo. App. 592, it was held to be error "to submit an instruction to a jury directing them to award damages for plaintiff's loss of time if they find the issue in his favor, if no testimony as to the value of plaintiff's time was introduced." A number of cases of like character are found in the reports of this State, among which is Kimble v. Railroad, 108 Mo. App. 78.

From the decisions mentioned it appears that the test as to whether a cause should or should not be reversed for the giving of an instruction where there is no evidence upon which to base it, is, was the instruction harmful or harmless? That is to say, what may have been its probable influence on the minds of the jurors in arriving at their verdict?

We are of the opinion that the instruction herein was harmful as it tended to confuse and mislead the jury. There was evidence that the plaintiff received injuries and bruises to his head and that he received internal injuries, and suffered a shock to his nervous system, and suffered bodily pain and mental anguish. In considering the many injuries plaintiff received the jury may have considered also that he was injured in his back and spine because the court in the instruction called attention to such injury. Although the instruction in substance tells the jury that they must find that plaintiff was injured in the respects mentioned before they can assess damages for such injuries, it is highly probable that the jury came to the conclusion that they must take into consideration an injury to plaintiff's back and spine, otherwise the court would not have submitted that matter to them. If the judge with all his experience and learning became confused and included the injury to the back and spine in the instruction, it will not do to assume that the instruction was harmless because the jury in all probability did not take such injury into consideration. It would not be logical to say that the

jury was superior to the judge and better calculated to understand the issues than the latter.

It is also urged that the court erred in refusing defendant's instruction C. As all it contains was substantially given in instruction numbered 8, given in his behalf the defendant was not injured in that respect.

For the error noted, the cause is reversed and remanded. All concur.