| 68 | 315 |
|----|-----|
| 100 | 124 |
| 68 | 315 |
| 115 | 630 |
| 68 | 315 |
| 148 | 236 |

THE STATE v. MAHLY, *Appellant.*

1. **Homicide**: CRUEL TREATMENT : INSTRUCTIONS. Where the defendant was indicted for the murder of his step-daughter, a girl three years of age, and the evidence showed a continual course of brutal treatment on his part, extending through a period of several months, resulting in the death of the girl from bruises inflicted by defendant; *Held*, that an instruction that the jury might convict of murder in the second degree, was erroneous, as the evidence, if believed by the jury, presented a clear case of murder in the first degree.

   **The Tendency of the Trial Courts** to encourage the sentimentalism of jurors who shrink from convicting of a capital crime, by giving them instructions which enable them to convict of a lower crime which the evidence does not sustain, condemned.

2. **Conduct of Trial**: ARGUMENT FOR STATE: IMPROPER REMARKS. The prosecuting attorney, in his closing argument to the jury, in

referring to the evidence of defendant, who had testified in his own behalf, said : " It was incumbent on him to show how these things were. Did he tell us how she was hurt? It was incumbent on him to prove how she was hurt," and, also, " The preponderance of tes- timony was in favor of conviction and against the defendant, and upon such evidence they must convict." *Held*, error for which the judgment should be reversed.

It is not the office of prosecuting attorneys to declare the law to the jury.

3.    Evidence : PRIOR ACTS. The conduct of defendant toward the de ceased, prior to the time of the commission of the murder, *Held*, admissible in evidence.

*Appeal from Miller Circuit Court.*—Hon. G. W. Miller, Judge.

Indictment for murder in the first degree for the kill- ing of one Barbara Citawatca, the defendant's step-daugh- ter.

At the request of the State the court gave, among others, the following instruction : "The jury are instructed that murder in the second degree is the killing of a human being intentionally, unlawfully, willfully and maliciously ; that is, it is the intentional, willful and malicious killing of a human being upon a sudden heat of passion, without previous deliberation or premeditation. If, therefore, the jury believe from the evidence in this case that the defend- ant caused the death of Barbara Citawatca, by any of the means enumerated in either count of the indictment, in- tentionally, unlawfully, willfully and maliciously, and in a sudden heat of passion, then the jury will find the defend- ant guilty of murder in the second degree, and assess his punishment," &c. The defendant was found guilty of mur- der in the second degree. Motion for new trial and in arrest overruled. Defendant appeals.

*J. L. Smith*, Attorney-General, for the State.

The instruction defining murder in the second degree is in harmony with the repeated decisions of this court.

*State v. Lame*, 64 Mo. 319; *State v. Wieners*, 66 Mo. 13. As to the right of the prosecuting attorney to comment on the testimony of defendant in his own behalf, see *State v. Harrington*, 5 Cent. Law Jour. 154; *Stover v. People*, 56 N. Y. 315; Cooley's Con. Lim., 317 *n*.

*Luy & Belch* and *Owens & Wood* for appellant.

HENRY, J.—The defendant was indicted for the murder of Barbara Citawatca, his step-daughter, a child about three years of age. He was found guilty of murder in the second degree, and sentenced to imprisonment in the penitentiary for a term of twenty-one years, and has appealed to this court from the judgment.

The evidence for the State consisted of threats made by the defendant against Barbara, and of a course of the most brutal treatment of the child by the defendant, extending through a period of several months. Finally, on the morning of October 17th, 1876, Barbara was found lying on the hearth dead, with evidences on her body that her death was occasioned by burning. There was evidence tending to prove that defendant was guilty of murdering the child.

If the witnesses for the State testified to the truth, he was guilty of a willful, malicious, premeditated and deliberate murder. There is not in the record a scintilla of evidence to authorize an instruction to the jury in regard to any crime except that of murder in the first degree.

1. HOMICIDE: cruel treatment: instructions.

The principal witness for the State, Jacinsky, testified to having seen defendant, on several occasions, hold the child in a perfectly nude state before a strong fire, until its skin was burnt red, and she writhed in her torture like a worm; and this in his presence, *and in the presence of Barbara's mother*, without so much as a word of remonstrance from either; that he had seen the defendant kick the child, beat her with sticks and throw her out of the house, and that, on one occasion, her nose was broken by the

fall; this, too, in the presence of the mother.    Shortly after the child was buried, the body was disinterred for examination, in consequence of rumors that Barbara had been murdered by the defendant; and yet the defendant remained quietly on his farm, living in harmony with his wife, the mother of Barbara, for twelve months before any steps were taken to bring him to justice for perpetrating so foul and unnatural a murder.    We will not say what credit the jury should have given to the testimony of Jacinsky. That is not our province, but in considering the case we may say that the evidence of the witness as to the conduct of the defendant, in connection with the conduct of the witness and Mrs. Mahly, Barbara's mother, as testified to by him, presents a shocking case of depravity in the defendant, and as singular an indifference to its exhibition by Jacinsky and Mrs. Mahly, as is to be found in the records of crime.    According to his testimony, the child was starved, flogged, kicked, roasted by the fire day after day for months, and finally murdered by the incarnate fiend, who was the husband of its mother; and yet the court instructed the jury that they might, and the jury did, find that he was only guilty of murder in the second degree. If he killed the child under the circumstances detailed by Jacinsky, human language is inadequate to characterize the atrocity of the crime; and which, among the horrible details, the court regarded as authorizing an instruction as to murder in the second degree, we cannot conjecture. Courts should not humor or encourage the sentimentalism of jurors, who shrink from finding an accused guilty of the highest crime of which the evidence proves him guilty, by giving instructions authorizing them to find him guilty of a lower grade of which there is no proof of his guilt.    If they have a reasonable doubt of his guilt of the only crime which the evidence tends to prove, they should acquit, and not compromise with that doubt by finding him guilty of a lower grade of offense.    Instructions in regard to the lower grades, not warranted by the evidence, operate as

persuasives to juries to convict of one of those grades when they should convict the accused of the highest, or acquit him altogether. The court erred in giving the instruction defining murder in the second degree, because there was no evidence to support it. *State v. Schoenwald,* 31 Mo. 152; *State v. Starr,* 38 Mo. 269; *State v. Alexander,* 66 Mo. 148.

Another complaint made by appellant is, that the court permitted the prosecuting attorney, in his closing argument to the jury, to say : " Mahly was on the stand, why did he not tell us how the child was burned ? It was incumbent on him to show how these things were.· Did he tell us how she was hurt ? It was incumbent. on him to prove how she was hurt. The defendant was there, master of his own house, and it was incumbent on him to show that he did not inflict the burns." Again he said to the jury in that closing argument : " The preponderance of testimony was in favor of conviction and against the defendant, and upon such evidence they (the jury) must convict." Every one of these declarations was a gross misrepresentation of the law, and such conduct on the part of the prosecuting attorney has so often been condemned by this court, that the hope was indulged that the admonitions given would be heeded. It is not for prosecuting attorneys to declare the law to the jury. That is the duty of the court, and the State's attorney is as much bound by the law as declared by the court as are the jury and the accused. The court declared the law, but the prosecuting attorney, not satisfied with the instructions given by the court, made declarations of law to the jury in conflict with those given by the court, and manifestly and palpably erroneous. Can we say that the prisoner was not prejudiced by this conduct of the State's attorney ? If he knew the law and made these ·declarations to the jury in order to procure a conviction, his conduct was very reprehensible. If he knew no better, he should have accepted the law as given by the court.

2. CONDUCT OF TRIAL: argument for State: improper remarks.

Persons accused of crime must be fairly tried, and when so tried, we shall not interfere to prevent them from being punished; but it is not only the duty of this court, but every officer of the State who has duties to perform in regard to the trial of persons accused of crimes, to see that they have a fair and impartial trial. The circuit court should have rebuked the prosecuting attorney and told the jury that the law was not as the attorney declared it to be, and for not having done so, the judgment should be reversed.

It was not error to permit the State to prove the conduct of the defendant toward the child, prior to the time 3. EVIDENCE: prior of the commission of the murder, as alleged acts. in the indictment. It was admissible to show malice, premeditation and deliberation; malice may be proved by acts as well as by threats. All concurring, the judgment is reversed and the cause remanded.

REVERSED.