## JOSEPHINE RIEGEL SOTEBIER v. ST. LOUIS TRANSIT COMPANY, Appellant.

**Division Two, May 14, 1907.**

1. **INSTRUCTIONS: Assumption of Uncontroverted Fact: Loss of Wages.** The instructions may assume the truth of a proposition which is established by the undisputed evidence. And so, where the undisputed evidence was that plaintiff at the time of her injuries was receiving twelve dollars per month and her board, and there was no evidence that her services were not reasonably worth that, and there was no evidence that she had been able to perform any labor or earn any wages since the accident, it is not error to instruct the jury to allow her for loss of her wages.

2. ———: **Medical Expenses Incurred.** It is the debt incurred by plaintiff for necessary medical attention, and not its payment, that establishes defendant's liability to pay in personal injury cases. It is unnecessary to allege payment. But where the petition charges that plaintiff "has expended and will be required to expend large sums of money for hospital fees, nurses, doctor's bills, and medicines," she is entitled to recover not only for those she has already paid, but the reasonable value of the services already necessarily rendered and not paid for, and also the reasonable value of services necessary in the future.

3. ———: ———: **In Future: Evidence.** Evidence showing that plaintiff is a hopeless paralytic as the result of her injuries, and would constantly grow worse, was evidence to authorize a

Sotebier v. Transit Co.

clause in the instruction directing the jury to include in their verdict expenditures which might be necessary for plaintiff to incur in the future.

4. ———: ———: ———: **Possibly Might.** An instruction which tells the jury that they may allow plaintiff for any reasonable and necessary expenses for medical attention which she may incur in the future, does not mean that the jury may allow her for any expenses she "might possibly" incur.

5. ———: ———: ———: **Matter for Jury.** No positive evidence or opinion can be given as to what medical attention a plaintiff, whose injuries are permanent and consist of paralysis from the hips down, will require. The most that can be done in such a case is to show that the character of the injuries are such that plaintiff will probably need medical attention in the future, and then tell the jury that they may allow such sum therefor as the evidence shows would be just and reasonable. The jurors are as capable of fixing a proper award for such contemplated expenses as anyone.

6. **EVIDENCE: Impeachment.** Evidence which is admissible for any purpose cannot be excluded because it is inadmissible for other purposes. Evidence for plaintiff, in rebuttal, that a physician at the hospital (who was in the employ of defendant) pulled her up and down the hall in an effort to make her walk until one of the Sisters told him to take her to bed where she belonged, is incompetent as hearsay and as tending to prove no issue in the negligence case, but it is competent for impeaching the physician who had testified that no one stopped him from trying to make plaintiff walk. If the defendant desired to have it limited to the purposes for which it was competent, it is its duty to ask an instruction so limiting it.

7. **EXCESSIVE VERDICT: $10,000.** Plaintiff, as a result of her injuries, is paralyzed from her hips down, her limbs are becoming atrophied, her bowels refuse to perform their normal functions in the natural way, nor from sensation can she tell when she should look after them in that regard; she is sleepless, nervous, and suffers from headache, and her condition is growing worse. *Held*, that it cannot be seen how, if the jury believed her evidence to this effect, their verdict for $10,000 could have been less.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

AFFIRMED.

*Boyle & Priest, Edward T. Miller* and *T. E. Francis* for appellant.

(1) Instruction number 3, on the measure of damages, given on behalf of plaintiff is erroneous, because: (a) It assumed that plaintiff lost wages as a result of her injuries. Plummer v. City of Milan, 70 Mo. App. 598; Evans v. Joplin, 76 Mo. App. 22; Fullerton v. Fordyce, 121 Mo. 13; Freeman v. Railroad, 95 Mo. App. 104. (b) It permitted plaintiff to recover for medical expenses incurred, when the petition alleged that they had been paid. Muth v. Railroad, 87 Mo. App. 422; Stanley v. Railroad, 112 Mo. App. 601; Nelson v. Railroad, 113 Mo. App. 659. Curtis v. McNair, 173 Mo. 291, is distinguishable from the case at bar and those above cited. (c) It allowed a recovery for future medical expenditures, in the absence of testimony that such expenditures would be necessary or what their probable amount would be. 6 Thompson's Commentaries on Negligence, sec. 7333; Railroad v. Flood (Tex.), 70 S. W. 331; Duke v. Railroad, 99 Mo. 351; Smith v. Railroad, 108 Mo. 243; Morris v. Railroad, 144 Mo. 500; Robertson v. Railroad, 152 Mo. 390; Slaughter v. Railroad, 116 Mo. 275. (d) It allowed a recovery for future medical expenses which "probably might" be sustained by plaintiff, instead of limiting the recovery to such expenses as the evidence showed it was reasonably certain plaintiff would be compelled to sustain. Albin v. Railroad, 103 Mo. App. 308; Schwend v. Railroad, 105 Mo. App. 534; Walker v. Raliroad, 106 Mo. App. 321; Bradley v. Railroad, 138 Mo. 301. (2) The court committed prejudicial error against defendant by permitting plaintiff to testify that a Sister in the hospital had told the doctors, who were assisting plaintiff to walk, "to take her where she belonged." (a) It was inadmissible to prove any issue in the case, because, at best, it was merely a statement of the opinion expressed by the Sister. Spencer v. Rail-

road, 120 Mo. 154; Koenig v. Railroad, 173 Mo. 720; Allen v. Railroad, 182 Mo. 437. (b) It was inadmissible to prove any issue in the case because it was hearsay. (c) It was inadmissible to impeach the evidence of Dr. Grim because the proper predicate for its introduction as impeaching evidence was not laid. Gregory v. Chouteau, 36 Mo. 159; State v. Grant, 79 Mo. 132; Spohn v. Railroad, 116 Mo. 629. (3) The court committed prejudicial error in commenting on the testimony of Thomas Lacey, by stating that "the jury will determine what weight is to be given this testimony— whether any, or how much, and all that." 21 Enc. Pl. & Pr., 95, 994; Shakeman v. Potter, 98 Ia. 66; 1 Blashfield, Inst. to Juries, sec. 106; Davidson v. Wallingsford, 88 Tex. 619; Thompson on Charg. Jury, p. 58; State v. Cushing, 29 Mo. 215; State v. Stout, 31 Mo. 406; State v. Meagher, 49 Mo. App. 589; Schmidt v. Railroad, 149 Mo. 283. (4) The verdict is grossly excessive.

*McShane & Goodwin* for respondent.

(1) A careful reading of instruction 3 will show that the court did not assume that plaintiff lost wages as a result of her injuries. (2) A trial court may, with entire propriety by instructions to the jury, assume the affirmative of an issue of fact, which is established by the uncontradicted evidence. Fullerton v. Fordyce, 121 Mo. 1; Hall v. Railroad, 74 Mo. 298; Barr v. Armstrong, 56 Mo. 589; Caldwell v. Stevens, 57 Mo. 595; Robertson v. Drain, 100 Mo. 273; Hartman v. Muehlbach, 64 Mo. App. 565; Taylor v. Iron Co., 133 Mo. 348. (3) Appellant's point that instruction 3 erroneously allowed a recovery for medical expenses when the petition alleged they had been paid: (a) Having waived any objection to the admission of the testimony and allowed liabilities to be shown as expen-

ditures, it is too late after verdict to complain of an instruction bottomed on that theory. Spengler v. Railroad, 108 Mo. App. 329; Bragg v. Railroad, 192 Mo. 331. (b) Appellant can not complain on appeal that instructions were based on the evidence and not on the pleadings in a case as shown on this record. Bragg v. Railroad, 192 Mo. 331. (c) In a case of this kind there is no difference between expenses incurred and expenses paid. Curtis v. McNair, 173 Mo. 270; Mirrielees v. Railroad, 163 Mo. 470; Gorham v. Railroad, 113 Mo. 408. (d) Respondent was entitled to recover for expenses incurred. Mirrielees v. Railroad, 163 Mo. 470. (4) Appellant's point, that said instruction permitted a recovery for future medical expenses, in the absence of testimony showing a reasonable probability of the necessity of such expenses, and the probable amount thereof, is not warranted by the record. (a) Where the injuries of the plaintiff are shown to be the same from the day of the accident to the day of the trial; that nowhere has there been any change in her condition, except for the worse, and the evidence shows that her condition will remain the same throughout life; and the period of nearly one year having elapsed between the accident and the trial, the reasonable value of plaintiff's medical expenses during that time is a sufficient standard by which to measure future medical expenses, where it is shown that her condition will be the same as it has been, throughout life, and especially so is this true when no charge has been made for the temporary and immediate expenses just immediately after the accident. This is the same measure adopted in estimating future loss of earnings. 1 Joyce, Damages, secs. 229-230; Goodhart v. Railroad, 177 Pa. St. 1. (b) Where plaintiff has shown that she is entitled to nominal damages, the court cannot instruct a verdict for defendant. Owen v. O'Reilly, 20 Mo. 603; Goldman v. Wolff, 6 Mo. App. 490; Brevard v. Wimberly, 89 Mo.

App. 331. (c) And under such circumstances where an instruction is given authorizing a recovery, it will not be held bad where no specific objection pointing out the defect was made. Feeney v. Railroad, 116 N. Y. 381. (d) The cause must be tried on the same theory in the appellate court as it was in the lower court. Bragg v. Railroad, 192 Mo. 331. (e) Where an instruction is good as far as it goes, and defendant desires to restrict plaintiff's right to recover to more limited grounds than were covered by the instruction, defendant should ask an instruction to that effect, otherwise it waives error that may be caused thereby. Longan v. Weltmer, 180 Mo. 322; Wheeler v. Bowles, 163 Mo. 398; Harmon v. Donohoe, 153 Mo. 263; Robertson v. Railroad, 152 Mo. 382; Mathews v. Railroad, 142 Mo. 645; Browning v. Railroad, 124 Mo. 55; Parman v. City, 105 Mo. App. 691; Dunn v. Railroad, 81 Mo. App. 42. (5) The verdict is not excessive. (a) Verdicts for the same and greater amounts where the injury was not as serious as here have been sustained. Cambron v. Railroad, 165 Mo. 543; Cobb v. Railroad, 149 Mo. 609; Hollenbeck v. Railroad, 141 Mo. 99; Barr v. City, 121 Mo. 23; Waldheim v. Railroad, 87 Mo. 37. (b) The trial court was in a better position than this court to determine this matter. In the absence of most obvious error or mistake the judgment of that court should not be disturbed. Bolton v. Railroad, 172 Mo. 92. (c) A verdict supported by substantial evidence will not be vacated on the ground that it was excessive unless it is the manifest result of mistake or prejudice. Taussig v. Schields, 26 Mo. App. 318. (6) On the record the judgment was for the right party and in the absence of error affecting the merits, it should not be reversed. Bellismie v. McCoy, 1 Mo. 318; Mitchell v. Bradstreet Co., 116 Mo. 226; Jordans v. Eans, 97 Mo. 587; Valle v. Picton, 91 Mo. 207; Railroad v. Holladay, 131 Mo. 440; Com. Co. v. Block, 130 Mo. 668; Brandon

v. Carter, 119 Mo. 572; Herman v. Hartman, 189 Mo. 20.

FOX, P. J.—This action was instituted in the circuit court of the city of St. Louis on May 15, 1903, by plaintiff against the defendant, asking $20,000 damages for personal injuries received through the alleged negligence of defendant, by prematurely starting a car, while she was in the act of alighting therefrom, at Broadway and Washington avenue in said city.

The allegations of the petition, in so far as they are material in this case, are as follows: That she was a passenger on a north-bound Broadway car; that when it reached Washington avenue, it stopped for the purpose of taking on and discharging passengers; that while so stopped she started to alight from the same and that while so doing defendant negligently and carelessly started said car, thereby throwing her to the ground with great force and violence, and that by reason thereof her spine was violently wrenched, broken and sprained, and that by reason thereof she was paralyzed in her lower limbs and rendered utterly unable to stand or walk without support; that she also received severe cuts and bruises on her back and head which caused concussion of the brain, and that by reason of said injuries she is a complete nervous wreck, and will suffer and remain a paralytic and nervous wreck for life. That on account of said injuries she has been and will be throughout life unable to pursue her usual occupation and that she has expended and will throughout life be compelled to expend large sums of money for hospital fees, nurses, doctor bills, medicine, and transportation fees, such as carriage hire and attendants in going from one place to another.

The answer was a general denial and a plea of contributory negligence and carelessness on her part in attempting to alight from the car while in motion, at a

time and place when and where it had not stopped or slowed down for the purpose of allowing passengers to alight therefrom, and while said car was running at a rate of speed that made it dangerous for her to alight from same.

The reply was a general denial of the new matter stated in the answer.

The plaintiff introduced evidence tending to prove that on the evening of March 8, 1903, about 9:30 p. m., she and her sister, at Broadway and Gratiot street, became passengers on one of defendant's north-bound cars, on the Broadway line; that the car was crowded with passengers, some standing in the aisle, some on the platform and at least one on one of the rear steps of the car; that it was customary for passengers to enter and leave that class of cars at both front and rear doors; that plaintiff and her sister were riding near the front end of the car; that after entering the car it proceeded northward toward Washington avenue, an intersecting street, and that just before reaching the intersection, the motorman, who was on the front platform, said to the passengers in that end of the car, "Please step out this way;" that the car ran a little further and stopped at the northeast corner of Broadway and Washington avenue, for the purpose of receivng and discharging passengers, which was one of the usual places for that purpose; that several passengers entered and left the car at that point, at both front and rear doors; that plaintiff's sister and some five or six other passengers preceded her and that just in front of plaintiff there was an old gentleman who moved slowly and was also alighting from the car; that he, the sister and the other five or six passengers mentioned, safely alighted from the front end of the car; that the old gentleman obstructed the passage of plaintiff and impeded her egress from the car; that she followed immediately after him to the platform and onto the

step of the car; he stepped off and she immediately attempted to follow him and while in the act of stepping from the step of the car to the pavement, the car was suddenly started forward with a jerk and without warning and thereby threw her to the street with great force and violence, she striking the pavement upon her back and head; that the car stopped a second time in a few feet; that she was rendered unconscious by the fall, and was picked up from the street by a passenger by the name of Daush and pulled to the sidewalk near the northeast corner of those two streets; that she was unconscious and was unable to stand or walk, and said Daush and her sister picked her up and took her to a drug store on the corner of Broadway and Lucas, a block distance from the point of injury, and she was shaking like a leaf and appeared to be unconscious. An ambulance was sent for and she was carried to and placed in it and sent to the city hospital, where she remained that night; and next morning she was taken in a carriage to Mrs. Cavender's residence, the lady for whom she and her sister were employed at the time of the injury, where she remained one week and was then taken to St. John's hospital, where she remained four weeks and from there she was taken to her brother's home and later to that of her mother at Washington, Missouri; that her injuries consisted of a large bruise on the head, bruises and cuts on different portions of the body and a strained or fractured spine and a rupture of the spinal cord; that as a result of said injuries she suffered great physical pain and mental anguish, and was still suffering at the time of the trial; that she has been wholly incapacitated from performing manual labor; that she has been completely paralyzed from the hips down ever since the injury, and had not from that time to the time of the trial stood on her feet or walked a step, and that she would never be able to do so in the future, but was growing and would continue

to grow worse; that her lower limbs were becoming atrophied and would continue to do so; that she is and has been ever since the injury very nervous and sleepless and suffering more or less with headache; that the lower bowels are paralyzed and she cannot, in the natural way, answer to the calls of nature, nor from sensation tell when she should look after herself in that regard, but is compelled to depend upon a clock for that information, and at stated times cause a passage, by the assistance of physical means; that she is utterly helpless and cannot go from one place to another unassisted, and that her injuries are permanent; that at the time of the injury she was receiving the sum of twelve dollars per month for her services, together with board and lodging; and had incurred on account of her injuries the sum of $75 for doctor bills, medicines and nurses, etc.; that she was a strong and a perfectly well woman before the injury.

Then the defendant introduced evidence tending to prove that the car in question stopped on the north side of Washington avenue, that while standing there passengers entered and departed from the car, and then it started on north, and when near the center of the block the plaintiff stepped forward and walked off the front end of the car, some of the witnesses stating that she stepped off backwards; that the car was running five or six miles an hour at the time, and the place where she stepped off was not at a usual or safe place for passengers to alight. That while plaintiff was at the St. John's hospital she, with slight assistance of a physician, walked the full length of the hall and back, the hall being half a block long, and that she remained there about four weeks and was improving rapidly when she left there; that she was not paralyzed, but was suffering from what is known as hysterical paralysis, from which she would fully recover in a short time.

During the cross-examination of Thomas Lacey, a witness for defendant, the following occurred:

"Q.   Mr. Lacey, are you positive you gave the conductor, that was on the stand, your name?   A.   I wouldn't say that was the conductor.

"Q.   Is this the woman (indicating) you saw that was injured that got off the car then?   A.   I can't recognize her

"Mr. Goodwin:   Now, your Honor, I want to -move that every bit of this testimony of this witness with reference to this accident happening at Washington avenue and Broadway be stricken out.

"The Court:   You want the court to try your case, and I can't do that.   The jury will determine what weight is to be given to this testimony—whether any or how much, and all that.

"Judge Talty:   I object to the remarks of the court.

"The Court: It is not for the court to say whether it applies to this case, to this accident or some other accident; the jury must determine that.

"Mr. Goodwin:   Well, I want to say that this—

"The Court:   It is useless to discuss it now.   You will discuss that to the jury."

The court then, at the request of plaintiff, gave three instructions and one of its own motion, in behalf of plaintiff, to the giving of all of which defendant duly excepted; but as no complaint is urged against any of them, except the one numbered three, the others will not be noticed further.   Number three is as follows:

"3.   The court instructs the jury that if you find for the plaintiff you should allow her damages at such a sum not exceeding $20,000 as you believe from the evidence will be a fair and reasonable compensation to her; first, for whatever pain of body and mind she has suffered by reason of her said injuries, and that she

will hereafter suffer, if you find from the evidence she has suffered or will suffer any; second, for the loss of wages heretofore occasioned by said injuries and shown by the evidence, and any loss of her earnings you may find from the evidence, if any, she will hereafter suffer by reason of said injuries; and, third, for any reasonable and necessary expense that you may find from the evidence she has or may hereafter incur for medical treatment on account of her said injuries.''

And at the request of the defendant the court gave on its behalf eleven instructions, and refused one as asked, but modified it and gave it in the modified form, to which action of the court in modifying and giving that one it duly excepted, but makes no complaint in that regard here, so we will take no notice of it.

The court on its own motion instructed the jury as to the burden of proof and as to a three-fourths verdict.

The cause was submitted to the jury under the instructions and they found for plaintiff and assessed her damages at the sum of $10,000. Motions for new trial and in arrest were duly filed. Defendant also filed an affidavit in support of the motion for new trial, alleging prejudice of one of the jurors; and plaintiff filed three counter affidavits. The court overruled both motions and defendant duly excepted and has brought the case here by appeal, and assigns errors as follows:

1. The court erred in giving plaintiff's instruction numbered 3 on the measure of damages.

2. The court erred in admitting incompetent evidence.

3. The court erred in making prejudicial comments on the testimony of defendant's witness, Thomas Lacey.

4. The court erred in refusing to set aside the verdict as being excessive.

OPINION.

I.

The first complaint lodged against the action of the trial court is in giving instruction numbered 3, which is copied in the accompanying statement.   Defendant points out four specific objections to it; because, first, it assumes plaintiff lost wages as a result of her injuries; second, it permitted plaintiff to recover for medical expenses incurred when the petition alleged that they had been paid; third, it allowed a recovery for future medical expenditures, in the absence of testimony that such expenditures would be necessary or what their probable amount would be; and fourth, it allowed a recovery for future medical expenses which "probably might" be sustained by plaintiff, instead of limiting the recovery to such expenses as the evidence showed it was reasonably certain plaintiff would be compelled to expend.   We will dispose of these assignments in the order presented.

Defendant contends that the instruction assumed she lost wages as a result of her injuries. The uncontradicted evidence of the plaintiff, her sister and the lady who employed her was to the effect that she was earning twelve dollars a month at the time of her injury, and there is not a particle of evidence in the case tending in the remotest degree to show she has been able to perform any labor or earn any wages since that time, and all her evidence tended to show she has been totally unable to work since she was injured.   This court has many times held that the trial court may in its instructions to the jury assume the truth of a proposition which is established by the undisputed evidence in the case.   [Hall v. Railroad, 74 Mo. l. c. 302; Barr v. Armstrong, 56 Mo. l. c. 589; Fullerton v. Fordyce, 121 Mo. l. c. 13; Taylor v. Iron Co., 133 Mo. 349.]

There was no controversy whatever in this case as

to what wages plaintiff was earning at the time of the accident or that her services were not reasonably worth twelve dollars per month. The facts before the jury were sufficient to submit that issue to it. We are, therefore, of the opinion that there is no merit in that objection. [Wise v. Railroad, 198 Mo. l. c. 561-2.]

It is next contended that said instruction is erroneous because it permitted the plaintiff to recover for medical expenses incurred, when the plaintiff alleges that they had been paid. It is the debt incurred and not its payment which establishes the liability of the defendant to pay for medical expenses necessarily expended by plaintiff, in personal injury cases. It is wholly immaterial whether they have been paid for by plaintiff or not. It was neither necessary to allege or prove payment. That could in no wise affect defendant's liability for debts so incurred. The petition states "that she has expended and *will be required to expend* large sums of money for hospital fees, nurses, doctor bills and medicines." The evidence shows she not only incurred obligations for those things, but it also shows she has paid for some of them and will be required to contract additional indebtedness for that account in the future. It was wholly unnecessary to allege payment of those expenses. A complete cause of action was stated without that allegation, and it may be treated as surplusage. [Anderson v. Railroad, 161 Mo. l. c. 432; State v. Watson, 141 Mo. l. c. 341.]

"A pleader only runs the risk of narrowing the basis of his case when he goes beyond the necessary and substantive fact and indicates" that the indebtedness incurred had been paid, and says nothing about future expenses, which will necessarily have to be incurred. [Wise v. Railroad, 85 Mo. l. c. 188.]

In this case, however, it will be observed by reading the petition that the pleader did not rest with the allegation that the expenses had been paid, but went

further and alleged that it would be necessary to incur obligations for future medical treatment. The latter allegation removes from the case even the technical rule of pleading as stated in the two cases last cited. [Curtis v. McNair, 173 Mo. 270.] We are, therefore, of the opinion that there is no merit in this objection.

The third objection lodged against this instruction is that it permits the jury to include in its verdict expenditures which might be necessary for plaintiff to incur in the future, on account of her injuries, when there was no evidence to show that they would be necessary, or what they would be reasonably worth. We are also of the opinion that this objection is without merit, because at the trial the evidence showed that plaintiff had three physicians and one or two of them testified that she was then still under their charge and was a helpless, a suffering paralytic, and would never improve, but would continually grow worse. If that condition of her health does not tend to show she will need medical attention in the future, we are unable to conceive a case where such attention would be necessary. As to what attention she will require during her life and its probable value are matters of more or less speculation. No one can tell how long she will live, what her suffering will be or what amount of medical attention she will require. The jurors are as capable of judging of those matters as any one else could be. [See Curtis v. McNair, 173 Mo. 270.]

And the last objection urged against instruction numbered 3 is that it permitted the jury to allow for medical expenses which "probably might" be sustained by plaintiff, instead of limiting the recovery to such expenses as the *evidence shows it was reasonably certain* the plaintiff would be compelled to expend. We have carefully considered that instruction and have reached the conclusion that it is not susceptible of the construction placed upon it by defendant. It does not

tell the jury that they may allow her for medical expenses which "probably might" be incurred by her; but, upon the contrary, it tells the jury, in express terms, that they may allow her for any *reasonable and necessary expenses* for medical attention which she may incur in the future. And what we have said regarding the last objection is equally applicable to this one; but we will add that we are entirely unable to see how any witness could, with any degree of certainty, testify as to what *medical attention* she might require during the remainder of her life. No physician or expert can tell how long plaintiff will live; what her pain and suffering will be, if any; what kind and how often she will need medical treatment nor what such services would be reasonably worth in the future. The most the court can do in such cases is to call the attention of the jury to the injury, if permanent, and if the evidence shows that the character of the injuries is such that the party will probably need medical attention in the future, then tell them that they may allow such sum therefor as the evidence and facts in the case show would be just and reasonable for such attention and services. We do not wish to be understood as stating or holding that, in injuries of a temporary nature, where the patient will shortly recover, it would be impossible to ascertain with some degree of certainty as to what future medical treatment such a person would require, or the reasonable value thereof. We are of the opinion that the instruction given fairly presented the law upon that question to the jury, and are, therefore, of the opinion that there was no error on the part of the court in giving it.

## II.

It is next contended that the court committed prejudicial error in permitting the plaintiff in rebuttal to testify that a Sister in the hospital had told the doctors

who were assisting the plaintiff to walk, to "take her where she belonged." This assignment couched in the language in which it is does not fully and clearly present the exact ruling of the court on the admissibility of the evidence referred to. In order to obtain a clear view of the court's ruling it will be necessary to set out Dr. Grim's testimony upon that point, and in the light of that evidence we can better see the ruling of the court on the admission of the plaintiff's said testimony in rebuttal, which is as follows, in chief:

"Q. Do you know why she left [the hospital]? What was her condition when she left? A. Well, when she left she had been able to walk with some assistance, the full length of the hall of St. John's Hospital and back.

"Q. How long is that hall. A. Half a block.

"Q. The hall is half a block in St. John's Hospital? A. Yes, sir.

"Q. You say she had been able to walk with some assistance the full length of that hall and back? A. Yes, sir.

"Q. How do you know that? A. Because I helped her myself.

"Q. How much assistance did you give her? A. Well, a part of the time I just reached out my hand, holding her fingers at arm's length, and I, of course, tried to get her to walk with as little assistance as possible. I would allow my hand to move as she would attempt to bear weight on it."

On cross-examination:

"Q. The nurses are Sisters of Charity there, are they not? A. Not all of them.

"Q. Some of them are? A. Yes, sir.

"Q. Now, isn't it a fact that you started to teach or try to get this patient to walk and dragged her around there and two of the nurses interfered and told

you if you didn't quit it you would kill the woman. A. No, sir.

"Q.  Isn't it a fact that two of the nurses stopped you from trying to make her walk?  A.  No, sir; that is very far from a nurse's position.

"Q.  Isn't it a fact that somebody stopped you from making her walk?  A.  No, sir.

"Q.  Or trying to make her walk?  A.  No, sir."

The plaintiff was called as a witness in rebuttal and testified over defendant's objections, as follows:

"Q.  Did you hear Dr. Grim testify that you walked with his assistance out at the hospital?  A.  Yes, sir, I did.

"Q.  Is that true or not?  A.  No, sir.

"Q.  State what happened?  A.  They dragged me up and down the hall, the nurse and the doctor did, and the Sister in the hospital by the name of Catherine told them to bring me to bed where I belonged."

"Judge Talty, for defendant: I object to that and ask that it be stricken out.

"The Court: That last statement as to what the nurse stated is stricken out.

"Mr. Goodwin, for plaintiff: I asked the doctor that very question—the time, place and everything, and he stated that it didn't occur. That very thing I asked him.

"The Court: Yes, since you call my attention to it, that may stand. The objection is overruled."

The action of the court in admitting this evidence of the plaintiff in rebuttal is assailed upon three distinct grounds, because, first, it does not tend to prove any issue in the case, and, at best, was merely the statement of the opinion expressed by the Sister; second, it is hearsay, and, third, it was inadmissible to impeach Dr. Grim, because the proper predicate for its introduction was not laid. We will dispose of the first and second assignments together. It is true the evidence

objected to does not tend to prove any issue in the case and even if it did it is clearly hearsay, merely stating the opinion of the Sister as to the condition of plaintiff at the time Dr. Grim was assisting her to walk. It was therefore inadmissible upon both of said grounds. This is not controverted by plaintiff, and the rule of evidence is so well and firmly settled upon those questions that it would be a useless waste of time and energy to cite authorities in support thereof. But we do not understand that this evidence was offered or admitted for either of said purposes. The language of the court and of plaintiff's counsel, when the motion to strike out this evidence was made, showed clearly that it was offered and admitted merely for the purpose of impeaching Dr. Grim's testimony. He had previously testified that while plaintiff was in St. John's Hospital he was one of the assistant physicians of that institution (in pay, however, of defendant company), and that with his slight assistance she had walked the whole length of the hall and returned, and in order to show that statement of his to be false, and for the purpose of impeaching him, the questions were asked him, if he did not, in the presence of plaintiff and one of the nurses, pull or drag her from one end of the hall to the other, and that the nurse at the time protested. He had himself previously stated the time, place and circumstances, where the supposed conversation took place, and for that reason it was not necessary to go through the empty form to have him repeat his former evidence upon that question. He denied dragging plaintiff and testified that the Sister did not protest against his doing so, and when the motion was made by defendant's counsel to strike out that evidence the court did so, but subsequently, after having its attention called to the fact that the proper foundation had been laid to impeach the doctor, the court said: "Yes, since you call my attention to it, that may stand. The objection is overruled." This shows clear-

·ly that the evidence was admitted only for the purpose·
of impeaching Dr. Grim, and not for the purpose of
proving an affirmative substantive fact in the case.
Evidence which is admissible for any purpose can-
not be excluded simply because it is inadmissible for
other purposes. [Union Savings Asso. v. Edwards, 47
Mo. l. c. 449; State v. Baldwin, 56 Mo. App. l. c. 426;
Standard Milling Co. v. Railroad, 122 Mo. 258.]

Where the evidence is competent for any purpose,
it is the duty of the court to admit it when offered, and
if it is desired to have it limited in its effect then it is
the duty of the opposite party to ask an instruction for
that purpose. [Standard Milling Co. v. Railroad, 122
Mo. 258.] But the defendant in this case suffered no
injury by failing to ask such an instruction, because
the court in admitting the evidence by its language
limited the evidence to the impeachment of the evidence
of Dr. Grim, as clearly as if it had been done by an in-
·struction. Clearly this evidence was admissible for that
one purpose, and there was no error in the action of the
court in admitting it.

The defendant complains of the action of the court
in stating, while witness Thomas Lacey was testifying,
that "the jury will determine what weight is to be given
this testimony." We see no merit whatever in this
assignment; first, because the ruling of the court was
a correct declaration of the law, and there is scarcely
a case tried by a jury where such an instruction is not
asked by one or both parties, and given by the court,
and in this case this language is found in defendant's
tenth instruction asked by it and given by the court:
". . . and having thus carefully considered all these
matters, the jurors must fix the weight and value of
the testimony of each and every witness, and the evi-
dence as a whole, and you are not compelled to accept as
true any statement of any witness, unless the jurors

203 Sup—46

find such statement to be true,'' etc.    The expression of the court was not made as a comment upon the evidence of Lacey, but as a reason why he should not strike out his testimony as requested by defendant's counsel.

Finally, it is insisted by learned counsel for appellant that the verdict in this cause is excessive and for that reason ought not to be permitted to stand.    The verdict is for ten thousand dollars, and after reading in detail all of the testimony disclosed by the record, it would be difficult to understand, if the jury believed the testimony introduced by the plaintiff, how the verdict could have been for any less sum.    We shall not undertake to weigh the testimony of the witnesses respecting the nature and character of the injuries of the plaintiff.    This was exclusively the province of the jury and if they placed reliance upon the proof as introduced by the plaintiff, then we have no hesitation in saying that their verdict is fully supported.    The testimony upon this subject as introduced by the plaintiff, which is fully disclosed by the record, not only shows that her injuries were of a very serious and painful character, but as well that the result of such injuries has left her a complete physical wreck, in which condition she must remain the balance of her life.    We are unwilling to say that this verdict should be disturbed on that ground.

Our views upon the legal propositions presented by the record before us have been fully indicated, and finding no reversible error the judgment of the trial court should be affirmed, and it is so ordered.

All concur.