MOLLIE C. COURTER, RESPONDENT, v. G. W. CHASE & SON MERCANTILE CO., APPELLANT.*

Kansas City Court of Appeals. November 7, 1927.

44

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 2939, p. 959, n. 84; Evidence, 22CJ, section 167, p. 199, n. 36; section 460, p. 387, n. 47; section 545, p. 454, n. 72; Trial, 38Cyc, p. 1340, n. 98, 3, 4; p. 1341, n. 5; Witnesses, 40Cyc, p. 2735, n. 99.

*Ryan & Zwick, Maurice P. Murphy* and *Pross T. Cross* for respondent.

*Culver, Phillip & Voorhees* for appellant.

FRANK, C.—This is an action to recover damages for the death of plaintiff's husband alleged to have been caused by the negligence of defendant. The verdict and judgment in the trial court was in favor of the plaintiff in the sum of $5000 and defendant has appealed.

The facts show that on January 17, 1921, deceased was employed as a laborer by the defendant, a candy manufacturer in St. Joseph. On the morning of that day he was engaged in carrying merchandise from the sidewalk into one of defendant's buildings. In doing this work he was required to pass over a runway leading from the sidewalk to a platform in front of a door to the building. This runway was about fourteen feet in length, with one end resting upon the sidewalk and the other end elevated about thirty-one to thirty-six inches above the lower end; the width of the runway was about thirty-nine inches. It was parallel to the building and adjacent thereto. The platform was about four or five feet long and thirty-three inches wide. The runway consisted of four planks, with cleats

about six inches in length running crosswise up its center. On the day in question these cleats had been worn smooth and thin and had beveled edges.

Deceased's son, Fred Courter, was working with him at the time. He testified, in substance, that snow, ice and sleet had been permitted to remain on the platform against the cleats thereon; that he and deceased made a few trips over the platform on the morning in question, when deceased went to Myers, the foreman, and told him that the runway was very slick and asked permission to go to a nearby cinder pile to obtain cinders to place on the runway, and to a pile of lumber on another floor of the building in order to get a piece of timber to fasten on the outside of the runway as a guardrail; that the foreman replied to deceased, "No, you and your boy go out and get these pails off the sidewalk out of the weather;" that deceased then told the foreman that there should be a guardrail on the platform or runway, to which the foreman replied, "I will have that taken care of right away, get that stuff in;" that he and deceased then returned to their work; that nothing was done to the runway and in about one-half hour thereafter, as deceased was walking up this runway, carrying a string of wooden buckets nested together, his feet slipped and he fell to the paving below; that as he fell his side struck on the buckets or on the runway and he fell face downward on the pavement; that he was standing on a platform, at the top of the runway, about three feet from deceased at the time he fell; that deceased's feet were on the snow and ice at the time they slipped from under him.

Searcy, a witness for plaintiff, testified that on the morning of the accident he heard deceased tell defendant's foreman that the runway was slick and in bad shape and that he would like to get some ashes or something to put on it in order to avoid slipping; that the foreman, at that time, said to deceased, "You go ahead, get your work in, I will have that taken care of;" that deceased then asked the foreman if it wouldn't be a good idea to put a rail up there; that the foreman replied, "I will have that done too."

Plaintiff's testimony tends to show that as the result of deceased's injuries he died twenty-four days later.

Defendant's foreman, Myers, testifying on behalf of defendant, denied that he had a conversation with deceased on the morning of the accident relative to the slippery condition of the runway as detailed by plaintiff's witnesses, Fred Courter and Searcy, and denied that he promised deceased to remedy such condition by placing cinders and a guardrail on the runway.

On cross-examination Myers was asked if he was not at the home of deceased some days after the injury, and if at that time and place he said to deceased that he was sorry this had happened and it would not have happened if he had done what he promised deceased he

would do, to which deceased replied, that it would not have happened if he (Myers) would have let him do what he wanted to do.

Myers denied having such a conversation with deceased. Plaintiff's witnesses, Mrs. Hall and Lora Smith testified in rebuttal that Myers did have such a conversation with deceased; that some days after the injury they were at the home of the deceased and that Myers had such conversation with deceased at that time.

At the close of the evidence defendant requested and the court refused to give instruction "F" which told the jury in substance that the alleged conversation between Myers and deceased at his home some days after deceased's injury was no evidence that Myers had a conversation with deceased on the morning of the accident, or that he, Myers, promised to put cinders or a guardrail on the runway.

Contention is made that the court erred in refusing this instruction, and erred in not limiting the rebuttal testimony of Mrs. Hall and Lora Smith to the impeachment of the evidence of Myers.

At the time the rebuttal testimony of Mrs. Hall and Lora Smith was offered, appellant objected to its introduction on the ground that it was hearsay and that no proper foundation had been laid for its admission. This objection was overruled. The propriety of the court's action in admitting this evidence, and in permitting the foundation to be laid for its admission, is not challenged in this court. The contention here made is that the effect of such evidence should have been limited to the impeachment of the evidence of defendant's foreman, Myers. We agree that statements made by defendant's foreman, Myers, to deceased several days after the injury and not while in the performance of his duty to his master, are mere expressions of an opinion as to what might have happened under different conditions, are no part of the *res gestae* and are not binding on appellant. Facts should be established by the sworn testimony of a witness who has knowledge of such facts and not by his unsworn statements, unless the party against whom the statement is offered, authorized the making of such statement. A master is considered as bound only for the actual conduct of the servant while in the performance of his duty and not for whatever he might say he had done, and, therefore, is entitled to proof of such conduct by original evidence where it can be had, excluding all declarations of the agent made subsequent to the act to which they relate, and out of the course of his employment. It is clear that Myers was not representing appellant at the time he was talking to deceased at his home, several days after the injury, therefore statements made by him at that time are no evidence that deceased, on the morning of the accident notified Myers of the slippery and unsafe condition of the runway, or that Myers promised to remedy such condition by putting cinders and a guardrail on the runway. [Redman v. Metropolitan Ry. Co., 185 Mo. 1; Atkinson v.

American School of Osteopathy, 240 Mo. 338; Cross v. Northern Central Coal Co., 186 S. W. 528; Carson v. St. Joseph Stock Yards Co., 167 Mo. App. 443; Parr v. Illinois Life Ins. Co., 178 Mo. 155; Lee v. St. Louis, H. & S. E. R. Co., 112 Mo. App. 372.]

After Myers denied making those statements to deceased, the testimony in question was admissible, for the purpose of impeachment. The rule is well settled that evidence which is competent for any purpose may not be excluded on the ground that it is incompetent for other purposes. [Sotebier v. Transit Co., 203 Mo. 721.] It is also equally well settled that when evidence, competent for one specific purpose, is admitted, the court, if requested so to do, should limit the effect of such evidence to the purpose for which it is competent.

The court may limit the effect of such evidence when admitted, or by instruction at the time the case is submitted to the jury. [Downing v. St. Louis-San Francisco Ry. Co., 285 S. W. 791, 792; Bujalo v. St. Louis Basket & Box Co., 227 S. W. 844, 846; Wright v. Hines, 235 S. W. 831, 832; Sotebier v. Transit Co., 203 Mo. 702, 721.]

At the time the impeaching evidence of Mrs. Smith was admitted over the objection of defendant, the court said,

"I think it is admissible for this reason. Mr. Myers was asked the direct question, and without objection, it was answered. And for the purpose of impeachment, I think it is admissible not to prove the ultimate fact but for the purpose of impeachment."

After the admission of this evidence the following occurred:

"To which action and ruling of the court the defendant, by counsel, then and there duly excepted at the time and still excepts.

"MR. VOORHEES: 'We wish Your Honor would instruct the jury that this evidence is admitted for the purpose of impeachment only, and that it is not any evidence that any such thing ever occurred as this conversation between'—

"MR. CROSS (interrupting): 'Will the instructions be in writing?'

"MR. VOORHEES: 'Courter and Myers. That is, that he asked for a guardrail or cinders.'

"THE COURT: 'The court will instruct the jury at the proper time.'

"MR. VOORHEES: 'I mean in connection with this evidence, as far as this witness' testimony is concerned.'

"THE COURT: 'I will at the proper time.'

"To which action and ruling of the court the defendant then and there duly excepted at the time and still excepts."

The same character of record was made at the time the impeaching evidence of Mrs. Hall was admitted.

If this were a question of first impression in this State, the writer would hold that the language used by the court at the time the impeaching evidence of Mrs. Smith was admitted, was not sufficient to limit the effect of such evidence to the impeachment of witness Myers.

However, the Supreme Court has passed on a kindred question in Sotebier v. Transit Co., 203 Mo. 702, and it is our duty to follow it. At page 719 of that case the following record appears.

"The plaintiff was called as a witness in rebuttal and testified over defendant's objections, as follows:

"Q. 'Did you hear Dr. Grim testify that you walked with his assistance out at the hospital?' A. 'Yes, sir, I did.'

"Q. 'Is that true or not?' A. 'No, sir.'

"Q. 'State what happened?' A. 'They dragged me up and down the hall, the nurse and the doctor did, and the Sister in the hospital by the name of Catherine told them to bring me to bed where I belonged.'

"JUDGE TULTY, for defendant: 'I object to that and ask that it be stricken out.'

"THE COURT: 'That last statement as to what the nurse stated is stricken out.'"

"MR. GOODWIN, for plaintiff: 'I asked the doctor that very question—the time, place and everything, and he stated that it didn't occur. That very thing I asked him.'

"THE COURT: 'Yes, since you call my attention to it, that may stand. The objection is overruled.'"

In passing on this record the court said:

"This shows clearly that the evidence was admitted only for the purpose of impeaching Dr. Grim, and not for the purpose of proving an affirmative substantive fact in the case."

In passing on the question of limiting the effect of such evidence to the impeachment of Dr. Grim, the court said:

"Where the evidence is competent for any purpose, it is the duty of the court to admit it when offered, and if it is desired to have it limited in its effect then it is the duty of the opposite party to ask an instruction for that purpose. [Standard Milling Co. v. Railroad, 122 Mo. 258.] But the defendant in this case suffered no injury by failing to ask such an instruction, because the court in admitting the evidence by its language limited the evidence to the impeachment of the evidence of Dr. Grim, as clearly as if it had been done by an instruction. Clearly this evidence was admissible for that one purpose, and there was no error in the action of the court in admitting it."

The language used by the court in the instant case, at the time the evidence of witnesses Smith and Hall was admitted, which sought to limit the purpose and effect of the evidence of such witnesses to the impeachment of the evidence of witness Myers, is much more definite and specific than the statement made by the court in Sotebier v. Transit Company, supra, at the time the impeaching evidence was offered in that case. If, as said by the court in the Sotebier case, that the defendant suffered no injury by failure to ask an instruction

limiting the purpose and effect of impeaching testimony because the court in admitting the evidence by its language limited the evidence to the impeachment of the evidence of Dr. Grim, as clearly as if it had been done by an instruction, we cannot say in the case at bar, in view of the language of the court at the time the evidence was admitted, that the refusal of defendant's requested instruction "F" was such an error as materially affected the substantial rights of defendant.

It is insisted that the court committed reversible error in permitting plaintiff's counsel to make improper and prejudicial argument to the jury.

The record preserves the argument of plaintiff's counsel, and appellants objections thereto. A part of such record is as follows:

"So he (Searcy) stands unimpeached and unchallenged and there you have him thrown in the scales against Myers. That is two in the scales on one side, and Myers alone on the other. Then what do we find next? Oh, we find that, to prove this conversation just as we claimed it was, we find, before we get through, we have to go over and take Myers out of the scales on Chase's side, and bring him over, and dump him down with Searcy and Fred Courter. Why? Because when he went out there, and stood at the bedside—at the foot of the bed of that dying man, with his hat in his hand, oh, then he made the statements which prove conclusively that he said exactly what we claim he did in that warehouse that morning—

"MR. VOORHEES (interrupting): 'I want to object to that, Your Honor—that statement that that proves conclusively the conversation occurred—an improper comment upon the evidence.'

"THE COURT: 'It is used in the argument. Overruled. Proceed.'

"To which action and ruling of the court, the defendant, by counsel, then and there duly excepted at the time, and still excepts.

"MR. CROSS: 'What do we find, gentlemen of the jury? We find he goes there, and he says (John) he said (I am sorry)—where is that? Will you find that, Mr. Murphy?'

"MR. VOORHEES: 'Your Honor, I don't want to take Mr. Cross' time, and I am willing he shall have plenty of time to compensate for this, but I want to object to all of this comment about that conversation as being any evidence of it, without getting on my feet all the time.'

"THE COURT: 'Yes, sir.'

"To which ruling of the court and said action of the court in failing and refusing to sustain defendant's objection to said argument and comment by plaintiff's counsel, defendant then and there excepted and still excepts.

"MR. CROSS: 'Gentlemen of the jury, we find that out there he told Courter, "Yes, John, if I had done what I told you I would do, it wouldn't have happened." What, gentlemen of the jury, could that

have referred to, except his promise to put a guardrail on there, or to have the cinders and ashes put on? Now, did Myers say that? Who is it says he did? To that question you get Mrs. Harlin Hall. So you throw her in the balance. Then, next, what do we find? We bring in a good, hardworking, honest farmer of Andrew county— a Mr. Smith. I never saw him only on the witness stand two years ago and today, and we put him on and like an honest man, a disinterested witness, no kin whatever, Mr. Voorhees, to Mrs. Courter in this case, and he says, ''Yes I heard Mr. Myers say that.'' And so, gentlemen of the jury, it is proven conclusively Myers did say that. So, therefore, Myers admits—has admitted it himself, and it is conclusive. It is unanimous. There is not a single person standing out to contend that that conversation wasn't had. Now, gentlemen of the jury—'

''MR. VOORHEES (interrupting): 'Just a moment, please. We object to this comment on that conversation, and the argument of counsel, on that point, as improper and prejudicial, and again ask the jury be discharged on that account.'

''THE COURT: 'Overruled. The matter was passed on in the giving and refusing of the instructions to the jury. The point has been passed on, and preserved.'

''To which action and ruling of the court, the defendant, by counsel, then and there duly excepted at the time, and still excepts.''

The gist of counsel's argument is that the evidence of witnesses Smith and Hall to the effect that several days after the injury they heard a conversation between defendant's foreman Myers and decedent in which Myers said to decedent, ''Yes, John, if I had done what I told you I would do, it wouldn't have happened,'' was conclusive evidence that on the morning of and prior to the accident, decedent notified Myers of the slippery and unsafe condition of the runway and that Myers promised to repair same by placing cinders and a guardrail thereon. Such argument was an erroneous statement of the law, calculated to mislead and influence the jury. The alleged statement of defendant's foreman Myers, made after the injury and out of the course of his employment is not evidence that a conversation occurred between Myers and deceased on the morning of the injury, relative to the condition and repair of the runway. From counsel's erroneous statement of the law in argument, the jury might well have accepted the evidence of the witnesses Smith and Hall, admitted for the purpose of impeachment only, as proof of the fact that on the morning of the injury decedent notified Myers of the slippery and unsafe condition of the runway and that Myers promised to repair same by placing cinders and a guardrail thereon. We cannot say that the jury did not accept counsel's argument as a correct statement of the law. Incorrect statements of the law in argument to the

jury, the probable effect of which would be to influence the jury are erroneous and prejudicial. [2 R. C. L., page 420, sec. 18; State v. Mahly, 68 Mo. 315; State v. Reed, 71 Mo. 200; Elder v. State, 65 S. W. 938; Johnson v. A., T. & S. F. Ry. Co., 290 S. W. 462; Bergfeld v. Dunham, 201 S'. W. 640; Steuvenhaver v. K. C. R. R. Co., 213 S. W. 144.]

For the error noted in argument of counsel, the judgment herein is reversed and the cause remanded. *Williams, C.,* concurs.

PER CURIAM:—The foregoing opinion by Frank, C., is hereby adopted as the opinion of the court. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.